AMORY *against* LORD.

Where a testator, who died leaving a wife, children and grandchildren, devised his real estate to his wife and two other persons, in trust, to receive the net income thereof and apply it to the use of his wife during her life or widowhood, at her death or marriage to divide the same into as many shares as he should leave children surviving him,  the net income of one share to be received by each child during his or her life, and afterwards by his or her husband during life or until marriage, and then the fee of each share to vest absolutely in the children of each child, if any, and if none then in the right heirs of the testator: *Held,* that the entire devise was void, as it suspended the absolute power of alienation beyond the continuance of two lives in being at the time when the devise was to take effect.

By such devise the widow and children of the testator and their surviving wives and husbands did not take successive *legal estates,* in which case the

two first would be valid and the others void, but mere *equities*, all dependent upon the trust, which being void, the equitable interests all failed.

The absolute power of alienation was suspended, notwithstanding a qualified power was given to the trustees to lease the estate for terms not exceeding ten years, and to sell such portions thereof as might be necessary to discharge liens and pay for improvements upon the residue.

THE questions presented in this case arose upon an application to the supreme court of the first district to compel Mr. Lord to complete the purchase of certain lots in the city of New-York, bid off by him at an auction sale under a decree made in a suit for the partition of the lands. The purchaser denied the validity of the title upon the following facts:

James Amory, of the city of New-York, who was seized in fee of the lands at the time of his decease, made his last will and testament on the 19th of October, 1833, containing the following disposition of his estate, viz: " First, I give the net annual income, interest, dividends, rents and profits of my said estate, real and personal, to my beloved wife Martha, so long as she shall continue my widow, to be applied by her, so long as she shall continue my widow, for her own support, and, during the infancy of any of our children, for the education and maintenance of such children, till they respectively shall arrive at the age of twenty-one years, their education to be the same as that I am now giving them; but so that said interests, income, dividends, rents and profits be received by my said wife, not in advance, but periodically as they may accrue; but if any part of my estate be mortgaged at my death, it is my will, notwithstand ing the precedent clause, that my said wife pay off said mortgages, by such instalments as she may be able, out of said annual income of my estate, first reserving the amount she may judge proper for her support, and the support and education of my children under age as aforesaid, and also reserving such further part of said income as my said wife may deem proper to be given, at her discretion, to my children of full age; and as I have the fullest confidence in my

said wife, and wish our children to feel themselves as much dependent on her as on me, she shall, while she continues my widow, dispose of such income as she shall receive from my estate, for the purposes above mentioned, in such proportions and manner as her judgment and affections may direct. Secondly, This devise to my said wife shall be in lieu of dower, and in bar of any claim of dower, or of any other claim by her on my estate. Thirdly, After the death or marriage of my said wife, my real and personal estate shall each be divided equally into as many shares as shall be equal to the whole number of my children who shall survive me, or who shall die before me, leaving lawful issues surviving me; and I give to each child of mine who may survive me, one such share of my personal estate absolutely; I also give to the lawful issue of any deceased child, one such share of my personal estate absolutely, equally to be divided among them, share and share alike. Fourthly, I give the net annual income, interest, rents, profits and dividends of one such share of my real estate to each child of mine who shall survive me, to be received by such child during his or her natural life, and afterwards by his or her wife or husband, so long as such wife or husband shall not marry again, the same to be paid by my executors, not in advance, but as the same shall accrue; and at the death of such child, and the determination of the interest or title of his or her wife or husband, I give the fee of the share of which such child received the profits, to the children of such child absolutely, in fee, as tenants in common, if such child leave any, but if such child leave no lawful issue surviving him or her, then to my right heirs. Fifthly, If any child of mine should die before me, leaving lawful issue surviving him or her, then I give to the children of such deceased child, one of said equal shares of my real estate absolutely and in fee, equally to be divided among them, share and share alike. Sixthly, If any child or grandchild of mine die under the age of twenty-one years, leaving no lawful issue surviving

him or her, his or her share of the real and personal estate shall go to his or her brothers and sisters, if any such be left, if not, then to my right heirs and next of kin. Seventhly, I do hereby appoint my wife, Martha Amory, so long as she shall continue my widow, an executrix, and I do absolutely appoint my friends, James A. Burtus, bookseller, and Francis Gross, lumber merchant, executors of this, my will, and trustees of my estate, real and personal, and notwithstanding anything hereinbefore contained, do devise the same in trust to them for the purposes of this will; and the better to effect my purposes in said will, I do hereby authorize my acting executors and executrix to lease out all my real estate from time to time, for a term of years not exceeding ten years at a time, and to erect buildings thereon, if it be necessary, and to pay all taxes, charges, incumbrances, assessments, mortgages or liens on my real estate, either out of the income of my real and personal estate, in the manner before provided for, or out of the personal estate, as they may deem best; or if it be necessary, then by a sale of only so much of my real estate as may be necessary for that purpose, and also to receive the net annual rents, profits, interest, income and dividends of my estate, real and per sonal, and then pay them over to my said wife, so long as she shall continue my widow, to be disposed of by her as before directed, and after her death or marriage, then to pay over my said personal estate, and the said net annual rents and profits, interest, income and dividends of my estate, real and personal, to and among my devisees or legatees, in the manner hereinbefore directed. Eighthly, Notwithstanding anything hereinbefore contained, my said wife, so long as she shall continue my widow, shall alone determine the amount of instalments to be paid off on any mortgages, unless it become necessary to pay more or the whole, to prevent legal proceedings for enforcing payment thereof."

There was a codicil published in 1835, but it has no bearing upon the present questions.

The testator died in February, 1835, without having revoked said will, and leaving a widow (Martha Amory) and seven children, viz., Samuel B. Amory, Rufus K. Amory, James Amory, Peter B. Amory, John Amory, Jane R. Allston and Martha B. Moore; and also several grandchildren.

Samuel B. Amory, having acquired by purchase from the widow a present estate in possession in a part of the lands devised to her use during widowhood, together with his wife, commenced a suit in the court of chancery in the year 1846, by filing their bill against the executors and trustees named in said will, and against the widow, the other children, and the grandchildren (several of whom were infants) of the said testator, in and by which bill the plaintiffs in substance alleged that certain portions of said will were void, by reason whereof the real estate of which the testator died seized descended to his children as heirs-at-law in fee simple, subject only to the estate of his widow during widowhood, and thereupon prayed for a partition of said real estate among the said children, or, in case such partition should be found impracticable, for a sale thereof.

In July, 1851, a decretal order was made in said cause at a special term of the supreme court in the first district (the cause having been transferred to that court under the constitution of 1846), by which it was among other things adjudged that the said will was void in respect to all the devises and limitations of the real and personal estate contained therein, except the devise of the income, interest, dividends, rents and profits of the testator's estate to Martha Amory (the wife of the testator) during widowhood, in lieu of dower, which was declared to be a valid legal estate. It was also declared that the children of the said testator, as his heirs-at-law, and by descent from him, were the owners in fee simple of the said real estate, subject only to the estate of the said Martha Amory, and her grantee, during widowhood, therein. In December, 1851, a further

order or decree was made, directing that the real estate of which the testator died seized, in the said decree and the bill of complaint described, should be sold at public auction, in the presence and under the direction of Philo T. Ruggles, a referee for that purpose appointed. The premises now in question were sold pursuant to that decree. Samuel Lord (the respondent) became the purchaser, and the sale having been approved by the court, the referee required him to complete his purchase, which he refused to do, on the ground that he could not obtain a perfect title. A motion was thereupon made by the complainants to compel him to complete the purchase and to pay the price by him bid for the lands, which motion was granted at the special term, but on appeal by the purchaser to the general term the order was reversed. From the order made at general term the complainants have appealed to this court. The cause was submitted on printed points by

*James Maurice* for the appellants, and

*Miller & Develin* for the respondent.

GARDINER, J. James Amory died in February, 1835 By the seventh clause of his will he appointed his wife Martha, during her widowhood, his executrix, and Burtus and Gross his executors, and trustees of his estate, real and personal. The testator then proceeds to declare that, "notwithstanding anything hereinbefore contained, I do devise the same in trust to them for the purposes of this will." The better to effect his purposes in the will, he authorized them to lease his real estate for a limited term, to erect buildings, pay all liens, &c., and, if it should be necessary, to sell so much of the real estate as might be necessary for those purposes. They were also to receive the rents, profits, income and dividends of his estate, real and personal, and pay them over to his widow so long as

she continued unmarried, to be disposed of by her as directed in the previous clauses of the will; and after her death or marriage to pay over the personal estate, and the net annual rents, &c., to and among the devisees and legatees in the manner thereinbefore directed.

The testator by this provision creates a trust fund consisting of all his real and personal estate. The trust may continue during the life of Mrs. Amory, as the trustees are directed to pay over to her, as the beneficiary, the rents and profits during her life, or until her marriage. The trust, however, is to continue beyond her life, since the trustees are required after her death or marriage to pay over the personal estate and the net annual rents, &c., to and among the devisees and legatees, as thereinbefore provided. By the third clause of the will the personalty is divided into equal shares, and given to such of the testator's children as survive him, and to the issue of those who die before him, the issue respectively taking the share of their deceased parent. The trust as to the personal estate of course ceases with the life of Mrs. Amory.

By the fourth clause the net annual income of the real estate is given, one share to each surviving child, " to be received by such child during his or her natural life." As the trustees, by the seventh clause, are to pay over the net annual income, as directed by the fourth clause, the trust as to the real estate must continue during the life of the children surviving the testator. This is the second life. But the trust does not then cease; because it is provided by the same clause not only that each child shall receive his ·or her share during his or her natural life, but that afterwards the same shall be received " by his or her wife or husband *so long* as such wife or husband shall not marry again." And at the death of such child, and the determination of the interest of his or her wife or husband, he gives " the fee of the share of which such child received the profits to the children of such child absolutely, in fee, as

tenants in common." As the wife or husband may remain unmarried, the trust may continue for the life of these persons, which is the third life in the order prescribed by the testator. If we are to understand the language of the devisor in its usual and ordinary acceptation, there is no room for construction. It is plain and explicit. · He makes the seventh clause the controlling one, by expressly declaring that, "notwithstanding anything before contained," he devised the whole property "in trust for the purposes of this will." One of those purposes was, that the trustees should receive the rents, issues and profits of his real estate, and pay them over to the husband or wife of a child dying after the decease of the testator. And, as if to remove all doubt of the continuance of the trust, he further declares, in the fourth clause, that upon the determination of the interest (that is, the equitable right of the husband or wife to receive these rents), the estate shall go in fee to the ultimate devisees. The right of the unmarried beneficiary to receive, and of course the duty of the trustees to collect and pay over, would only terminate with the life of the former; and the estate would then vest in interest and possession at the same moment. To my mind it is too plain for controversy, that if any trust is constituted by the seventh clause, it endures and was intended to endure for three lives at least. It therefore contravenes the provision of the statute which declares that the absolute power to sell real estate shall not be suspended, by any condition or limitation whatever, for a period longer than two lives in being at the creation of the estate, and was consequently void.

It is, however, argued, upon the part of the respondents, that the testator gave successive legal estates to the devisees named in the will; that these are valid for two lives, and void as to the residue, according to the provisions of the 17th *section*, 1 *R. S.*, 723. But this hypothesis repudiates the seventh clause altogether. When this clause

Amory *against* Lord.

was framed, the testator was fully aware that he had in form devised the rents and profits to his wife and children and their surviving wives or husbands; but he declares that, notwithstanding this disposition, he devises the whole of his estate in trust to the trustees designated, through whom the widow and the devisees are to receive the rents and profits previously allotted to them. They are to take from the trustees and through the trust. There is no discrepancy between the different parts of the will. By the prior provisions of this instrument, the widow and the other beneficiaries were to receive for their use the rents during their lives respectively. The mode by which this object was to be effected was the trust; and in the clause establishing it the testator distinctly refers to all the devisees as the *cestuis que trust* who are to receive his bounty in the manner and by the instrumentality there designated. This was his leading purpose; and to its accomplishment every other part of the will, whether apparently in conflict with it or not, is made subservient. To reject a clause thus explicit and emphatic would be in effect to make a will, instead of construing the one executed by the testator. The conclusion, I think, is inevitable, from the plain language of the testator, that he intended to create a trust as to his real estate, and we are bound to presume that he designed to establish a legal trust, with all its incidents. One of these incidents was, that the whole estate, legal and equitable, in the land, should be vested in the trustees, and that the persons for whose benefit the trust was created should take no estate in the lands, but might enforce the performance of the trust in equity. (1 *R. S.*, 729, § 60.) This equitable right, and no other, the testator intended to confer on the *cestuis que trust*, the widow included; and if by construction we can change this equity into a legal estate in the land, I see no reason why we might not designate a new beneficiary.

It is said that since the widow, as one of the trustees, was entitled to possession and the receipt of the rents and profits, she must be deemed to have a legal estate of the same quality, duration, &c., as her beneficial interest, according to 1 *R. S.*, 727, § 47. There are two answers to this suggestion : First, that this action was not aimed at active, but passive trusts. (4 *Paige*, 404.) This is far from being a nominal trust. The trustees were to lease the land, collect rents and erect buildings ; and it was their duty to preserve the property for the benefit of the beneficiaries whose interest accrued subsequently to that of Mrs. Amory. In the second place, the legal estate established by the will was a joint tenancy. Mrs. Amory had, at law, no interest in the land, or the rents and profits, which was susceptible of a division. Her separate conveyance would be a nullity ; and she could confer on no one the right of entry, or of collecting the rents. If the effect of the 47th section was to enable her to convey a freehold estate for her life, she could by a conveyance divest her co-trustees of possession, deprive them of the power to lease or sell the land, or to make improvements ; in a word, she could by her own act abolish the trust. And this doctrine, if sound, would be equally applicable to every trust sanctioned by the 55th section of the chapter of the Revised Statutes above cited, by which trustees were authorized to receive the profits of land and apply them to the use of any person for life or a shorter period.

Again, an attempt is made, in the argument submitted to us, to apply the rule prescribed by statute for future legal estates, to this trust ; and the trustees are supposed to hold one estate for the life of Mrs. Amory, a second for the child surviving the testator, and a third for his or her wife or husband ; that since by the statute a remainder limited on three or more lives is void, as to the excess beyond two lives in being at the death of the testator, so in this case the law will preserve the two first trust estates, and avoid

the third only. The answer to this suggestion has been anticipated. The testator created, or intended to create, a single estate in joint-tenancy, which should vest in the trustees the whole estate in law and equity, for all the purposes of his will. The quality of the estate would have been the same, whether the beneficiary was to receive the profits for two years or two lives. Where the statute clothes the trustees with the entire estate, legal and equitable, there can be no remainder, and where the right of the *cestuis que trust* is defined and limited to the enforcement of the trust in equity, there is neither necessity nor room for a springing use. In this case the trust is void because it establishes a perpetuity which the law prohibits. The whole estate upon which it was dependent falls with it. The powers bestowed upon the trustees are utterly incompatible with the hypothesis of distinct estates, either in law or equity. The power to make improvements, for example, is a continuing power, and might, for aught we can know, be discreetly exercised as well during the second or third life as the first; and during the time when the widow was to receive all the rents, as when they were to be divided into shares, the number of which was unknown, both at the execution of the will and at the death of the testator.

The judgment of the supreme court should be reversed, but under the circumstances, without costs.

TAGGART, J. The respondent insists that the devises contained in the will of James Amory are valid, and for that reason the suit for partition of the estate among the children could not divest the estate of the grandchildren of the testator who might be born subsequently to the commencement of the suit for partition; that such grandchildren might take a valid estate in the property devised by the testator, of which they could not be deprived by the judgment in the partition suit, hence a perfect title could not,

in pursuance of the orders and decrees in that suit, be con·veyed to the respondent.

If the respondent is right in this proposition, the order of· the general term must be affirmed. It therefore becomes necessary to examine the statute in connection with the adjudications under it, to ascertain whether the devises · in the will of the real estate, other than the devise to the wife during her widowhood, are or are not valid. " The absolute power of alienation shall not be suspended by any limitation or condition whatever for a longer period than during the continuance of not more than two lives in being at the creation of the estate." (1 *R. S.*, 723, § 15.) " Every future estate shall be void in its creation which shall suspend the absolute power of alienation for a longer period than is prescribed in this article. Such power of alienation is suspended when there are no persons in being by whom an absolute fee can be conveyed." (*Id.*, § 14.)

Tested by the rules laid down in these two sections, the devise in this case cannot be sustained in its full extent, unless we construe the statute as not applying to those cases where the suspension may or may not exceed two lives in being at the creation of the estate. Laying the question of trust aside, it is very evident that the absolute power of alienation is so suspended that more than two lives in being may exist intermediate to the creation of the estate and the ·vesting of an absolute estate in possession. ·. The testator devises his estate to his wife during her widowhood. This is one intervening life between the creation of the estate and the vesting of an absolute fee in possession, provided she remains a widow during her natural life. One-seventh part of the estate is then devised to Samuel B. Amory during his natural life. This is the second intervening life estate, and at the end of such life estate there may be no person in being by whom an absolute fee in possession can be conveyed, or in whom it will vest; for if Samuel B. Amory shall leave a wife surviving him, she will

be entitled under the will to an estate for her natural life, being the third intervening life estate before the vesting of the absolute fee in the children of Samuel B. Amory.

It will be observed that the testator does not devise the estate to his children, but only the net annual income during their lives ; and he does not devise the fee of the shares to his grandchildren at the expiration of the life of the child, but devises the estate to the grandchildren at the death of the child and the determination of the interest or title of his or her wife or husband. The estate does not vest in the surviving grandchild at the decease of his or her father or mother, but it remains in the trustees until the death of the surviving husband or wife. Although the grandchild who survives the deceased child eventually takes the estate, such child does not take it until the determination of the third life estate, and the grandchild cannot convey a fee in possession until the estate vests.

In the case of *Hawley* v. *James* (16 *Wend.*, 120) Chief Justice NELSON, in delivering an opinion in the court of errors, says : " If in either aspect the limitation of the estate might suspend the power of alienation beyond the time allowed by the law, it will be impossible to sustain it, because the rule is well established that a limitation which by possibility may create such suspension, is void." And again, he says : " In the language of Chancellor KENT, the possibility at its creation that the event upon which it depends may exceed in point of time the authorized period is fatal to it." (4 *Kent's Com.*, 283 ; 4 *Cruise*, 449 ; 2 *Burr.*, 873.) In the same case Mr. Justice BRONSON says : " If the estate is so limited that by any possibility the power of alienation may be suspended beyond the statute rule, the limitation is void."

I have treated the devise in this case as creating a tenancy in common in the children of the testator, and concede that it is a separate and distinct devise to each of such children, and so far as relates to them, alienation is not suspended

for the seven lives instead of one life for each child. In this view of the case it is necessary to ascertain whether the devise is in accordance with the provisions of the statute. It is fully settled by the cases of *Coster* v. *Lorillard* (14 *Wend.*, 265) and *Hawley* v. *James* (16 *Wend.*, 61), that the provisions of section 14 apply as well to present as to future estates, and also that the said section applies to trust estates as well as to estates in fee. It is, therefore, unnecessary to discuss these questions, even if they were essential to the decision of the case, but we need only ascertain whether the absolute power of alienation is suspended for more than two lives in being at the creation of the estate.

The testator gives the net annual income of his estate to his wife so long as she shall continue his widow. After her death or marriage he directs his real and personal estate to be equally divided into as many shares as shall be equal to the whole number of his children surviving him, or who shall die before him leaving lawful issue surviving him. He gives the net annual income of one such share of his real estate to each child who shall survive him, to be received by such child during his or her natural life, and afterwards by his or her wife or husband while unmarried, and at the death of such child and the determination of the interest or title of his or her wife or husband, he gives the fee of the share of which such child received the profits to the children of such child absolutely. During the continuance of these three estates or interests the title to the property is vested in the executors in trust. The title does not vest in the widow, nor in the child, nor in the husband or wife of such child. It does not vest in fee upon the death or marriage of the widow or upon the death of the child, but is held by the executors in trust until the termination of the three intermediate estates. Is the absolute power of alienation suspended? The trust in this case, if valid as such, is a trust within the third subdivision of § 55 in the article relating to uses and trusts, viz., "To receive the rents and

profits of lands and apply them to the use of any person during the life of such person or for any shorter term."

By § 60 it is provided that " every express trust, valid as such in its creation, except as otherwise provided, shall vest the whole estate in the trustees in law and equity, subject only to the execution of the trust. The persons for whose benefit the trust is created shall take no estate or interest in the lands, but may enforce the performance of the trust in equity."

Section 63 provides that " no person beneficially interested in a trust for the receipt of the rents and profits of lands can assign or in any manner dispose of such interest;" and by § 65, " every sale, conveyance, or other act of the trustees in contravention of the trust shall be absolutely void."

The testator authorized his executors to lease out all his real estate from time to time, for a term of years not exceeding ten at a time, to erect buildings thereon if it be necessary, and to pay all taxes, charges or liens on his real estate, by a sale, if it should be required, of so much only as should be necessary for the purpose. Aside, therefore, from the prohibition contained in § 65, the trustees are impliedly restrained from selling by the provisions of the will itself; and they are expressly disabled from selling by the provisions of that section. The *cestuis que trust* are prevented from selling by §§ 63 and 60. There are, then, in the language of § 14, " no persons in being by whom an absolute fee in possession can be conveyed." The absolute power of alienation is consequently suspended for a longer period than during the continuance of two lives in being at the creation of the estate. The estate was therefore void in its creation, and never had a valid or legal existence

It is insisted that because the third life estate is made void expressly by the provisions of § 17 of the same statute, so much of the will as gives an estate to the surviving husbands or wives of the testator's children should be stricken

out as surplusage, leaving the remainder of the will to stand in full force and effect. That section provides that successive estates for life shall not be limited unless to persons in being at the creation thereof. Now this provision avoids the estate to the surviving husband or wife, as their estate was in favor of persons not in being at the creation of the estate. But the remainder of § 17 is more especially relied upon to sustain the will. That provides. that where a remainder shall be limited on more than two successive estates for life, all the life estates subsequent to the two persons first entitled thereto shall be void, and upon the death of those persons the remainder shall take effect in the same manner as if no other life estates had been created.

This argument is a plausible one, and were it not for the rule that all parts of a statute should have effect, if possible, perhaps it might prevail. The argument may be somewhat strengthened by § 19, which provides that where a remainder shall be created upon any such life estate, and more than two persons shall be named as the persons during whose life the estate shall continue, the remainder shall take effect upon the death of the two persons first named, in the same manner as if no other lives had been introduced.

If, however, the reasons of the supreme court in the opinion delivered on the decision of this case are sound, what becomes of § 14? "Every future estate shall be void in its creation, which shall suspend the absolute power of alienation for a longer period than is prescribed," viz., not more than two lives in being at the creation of the estate. The creation of the estate was at the death of the testator. (§ 41.) If it suspended the power of alienation beyond two lives then in being, it was then void. It clearly did suspend the power of alienation during the probable life of the widow, then during the life of the child, and contingently during the life of the surviving husband or wife.

It was, therefore, a void estate by the provisions of §§ 14 and 15, and (if the supreme court is right) a valid estate by the provisions of §§ 17 and 19. The estate was vested in the executors during the continuance of the three lives, two in being at its creation and the other not then in being. The third life interest is void by the first as well as the last clause of § 17. In order to give effect to §§ 14, 15, 17 and 19, and each of them, we must adopt the following hypothesis, viz : where the absolute power of alienation is suspended for a longer period than two lives in being at the creation of the estate, the whole estate is void in its creation, so that not only the third life estate and the remainder, but the prior life estates are void. But where the absolute power of alienation shall not be suspended, although more than two successive life estates are created, the first two life estates and the remainder are valid estates under the provisions of §§ 17 and 19, but the third life estate is void, and the remainder must take effect immediately. In one case, the estates attempted to be created are vested estates, and the persons in whom they are vested may convey an absolute fee in possession. In the other, the estates are contingent, and do not vest until the happening of the event upon which the estate depends. The distinction I have attempted to draw removes all the difficulties, and all of the provisions of the statute above referred to have their full effect consistently with each other.

I must, before closing this case, refer to a class of cases which may be claimed to conflict in some manner with the case of *Coster* v. *Lorillard*. In the case of *Irving* v. *De Kay* (9 *Paige*, 523), the chancellor refers to the case of *Hawley* v. *James* (5 *Paige*, 320, 458, 459), and says : " The principles stated in that case, and which are now the settled rules of law, are, that the intention of the testator, when it shall have been ascertained from an examination of the will in connection with the situation of his property,

&c., at the time of making such will, must be carried into effect by the courts so far as that intention is consistent with the rules of law; that although some of the objects of the testator for which a trust is created, or some future interests limited upon the trust estate, are illegal and invalid, if any of the purposes for which the trust was created are legal and valid, and would have authorized the creation of such an estate, the legal title vests in the trustees during the continuance of such valid objects of the trust; except in those cases where the legal and valid objects of the trust are so mixed up with those which are illegal and void that it is impossible to sustain the one without giving effect to the other; and that every disposition by the testator of an estate or interest in the rents, profits or income of his real or personal property, and every trust in the will which if valid would have the effect of rendering the property inalienable for a longer period than is allowed by law, and every remainder or other future estate or other interest limited upon the trust which would have that effect, must be considered and treated as *absolutely void and inoperative*, in determining the question of the validity of a devise of the legal estate to trustees, or the validity of any other provision of the will."

Tested by the rules here laid down, I see no reason to change my opinion that the whole estate created by the will in question is void. The legal and valid objects of the trust, viz., the estate in the rents, profits, &c., devised for the benefit of the children, and the remainder in fee in the grandchildren, are so mixed up with the illegal and void one (the life estate in the surviving husband or wife), that it is impossible to sustain the one without giving effect to the other. The remainder limited upon such illegal estate is, therefore, absolutely void. Nothing remains, then, but the life estate in the child. That estate cannot be sustained, for a further reason than is stated above. It is merged in a greater estate, viz., the fee. The subsequent life estate and the

Amory *against* Lord.

remainder limited thereon being void, the fee must vest, and it vesting in the *cestuis que trust* of the second life estate, such estate is merged in and destroyed by the greater estate.

The order of the general term must be reversed, and that of the special term affirmed.

All the judges concurred in the foregoing conclusions.

Judgment accordingly.