JOHN L. BREWER, PLAINTIFF, *v.* MARY BREWER AND CAROLINE A. BREWER, AS EXECUTRIX OF, AND TRUSTEE, ETC., OF GARDNER BREWER, DECEASED, DEFENDANTS, APPELLANTS, MARY ELIZABETH PENNIMAN, CAROLINE AMORY AND ANNA SEARS AMORY, DEFENDANTS, RESPONDENTS, IMPLEADED WITH JOHN S. NOYES AND OTHERS.

*Trust — illegal suspension of power of alienation — not cured by giving power of sale — Extra allowance — cannot be made twice in the same action.*

A trust which would be otherwise void as suspending the power of alienation for more than two lives in being, is not made valid because of there being given to the trustee power to sell the trust property, the proceeds of such sale remaining subject to the execution of the trust.

Where an extra allowance is made in a decree for partition and sale, a further extra allowance cannot be made in the same action, on the making of a decree confirming the sale and directing the distribution of the proceeds.

APPEALS by the defendants, Mary Brewer and Caroline Abigail Brewer, as executrix of, and trustee under, the will of Gardner Brewer, deceased, from a decree of distribution made after a sale in an action for partition.

Gardner Brewer died at Boston, Mass., while residing there, leaving a last will and testament, which was admitted to probate as a will of real and personal estate both in Massachusetts and New York, and his daughter, the appellant, Caroline A. Brewer, is the executrix of, and trustee under, said will,

Said deceased left him surviving his widow, who is the appellant, Mary Brewer, and the following, who are his only heirs at law, to wit: Caroline A. Brewer, his daughter; Mary E. Penniman, his daughter, and the infant respondents, Caroline Amory and Anna S. Amory, who are his granddaughters and children of his daughter Ellen Amory, who died during his lifetime.

At the time of his decease he was seized of 150 undivided four-hundredth parts of certain real estate situate in the city of New York.

The question in issue arose as to the proper construction of the following articles of the will of the deceased:

*Seventeenth.* All the rest, residue and remainder of my property and estate, real and personal, of which I may die seized and possessed, or to which, at the time of my death, I may in any way be entitled at law or in equity, not herein otherwise disposed of, charged nevertheless with the payment of the annuity of $50,000 given to my wife as hereinbefore provided, I give, devise and bequeath in three equal shares and proportions, one of which shares is designed for the benefit of my daughter Mary Elizabeth Penniman; one for my daughter Caroline Abigail Brewer; one for the two daughters of my deceased daughter Ellen Amory: That is to say, I give, devise and bequeath the said residue and remainder of my property and estate, subject always to the charge aforesaid, to my daughter Caroline Abigail Brewer, in trust; to have and to hold the same to her, the said Caroline, her heirs, executors, administrators and assigns, but in special confidence to hold, manage and dispose of the same in the manner upon the trusts and for the purposes following, to wit: To hold and demise the real estate, and to invest as hereinafter directed the personal property above bequeathed to her in trust, and the proceeds of any sale or sales which she may make of any of the trust property, to collect and receive the rents, income, dividends, and profits thereof; to keep the real estate sufficiently insured and in tenantable repair; altering, improving, or rebuilding the same or any part thereof, and erecting buildings on any land which may be unimproved, as she shall deem best, and to appropriate for such repairs, alterations, improvements, rebuilding, and new erections, so much of the said personal property, rents, income, dividends and profits as may, in her opinion, be needful for that purpose; to pay all

taxes and assessments, and all charges for insurance on the said trust property; and, after all such charges and expenses, and a reasonable compensation for services, to pay to my said wife the aforesaid annuity during her life, and, subject to said annuity, to pay all the said rents, income, dividends, and profits in three equal shares; that is to say: One share to my daughter, Mary Elizabeth Penniman; one share to the two children of my deceased daughter, Ellen Amory; the other share to be retained by the aforesaid Caroline to her own use. The payments to be made quarterly, or at such other periods of time as the condition of the estate will permit. The power to make alterations and to erect new buildings is designed to protect and to make the property available, and is not to be exercised so as to delay payment of the annuity for my wife, or so as to absorb for any length of time the whole or any large part of the income intended for my two daughters and for the children of my deceased daughter. The income herein provided for my daughter Mary Elizabeth Penniman shall be paid as and for her sole and separate estate; the income designed for the benefit of the two children of my deceased daughter, Ellen Amory, shall be retained by my daughter Caroline Abigail Brewer, for the use of the said two children in the same way and manner as the said Caroline Abigail Brewer is authorized and directed to pay and apply the income of the sum of $100,000 mentioned in the thirteenth article or section of this instrument.

*Eighteenth.* From and after the decease of either of my daughters, Mary Elizabeth Penniman and Caroline Abigail Brewer, the income which may subsequently and before the final division of said trust-property accrue on the share or portion devised in trust for her benefit, shall from time to time be paid over to and among such person or persons as the said daughter may appoint by her last will and testament, or by any instrument in the nature of a testamentary disposition; and for want of such testamentary direction, the said income shall be paid to the lawful issue of such daughter in the same manner as may be provided by the law regulating descents. The income intended for the two children of my deceased daughter Ellen to be held and applied in conformity with the provision of the thirteenth article of this instrument.

*Nineteenth.* At the death of the last survivor of my wife and daughters who may be living at my death, and not sooner, I order

and direct that all the residuary trust, property and estate held by my trustee, under the provisions of this my will, shall be divided into so many equal shares that there shall be one share for each of my daughters who may survive me and shall have lawful issue then living, or who, pursuant to the power herein given, shall have made a testamentary disposition of her share of said trust property, and one share for the lawful issue then living of either of my daughters who may have deceased during ·my lifetime, including the issue of my deceased daughter, Ellen Amory; and I do order and direct that the said shares shall severally be disposed of as follows, that is to say: Each and every of my daughters who shall survive me shall have full power and authority by her last will or any testamentary writing by her, subscribed in the presence of three or more witnesses, to direct and appoint to whom one of the aforesaid shares shall be given; but if my said daughters, or either of them, should fail to appoint, then and in such ·case the share of the daughter so failing shall be divided to and among her lawful issue in the same proportions in which they would be entitled if my daughter had died seized of the same in her own right; and the share which may have been set apart for the lawful issue then living of a daughter who may have deceased in my lifetime, including my deceased daughter Ellen Amory, shall be divided to and among such issue in the same proportions in which they would have taken the same if such daughter had died seized thereof in her own right.

*Twentieth.* If there shall be no lawful issue of my body living at the decease of the last survivor of my wife and daughters, then it is my will that such of my property and estate as shall remain, excepting so much thereof as may have been disposed of by the appointment of my daughters shall go to my heirs at law.

· The twenty-third article of the will authorized the trustee and her successor " to sell and convey any part or all of the estates, real and personal, constituting the residue aforesaid     *     *     *     the proceeds of any and every such sale to be held upon the trusts herein established."

This real estate was sold under the decree in this action, and the proceeds of the Brewer portion thereof were brought into court to await the further order of the court.

Thereafter it was referred to William G. Choate, Esq., to take

proof as to the respective rights of the heirs at law of said deceased and the devisees under his will to said proceeds, and to report the same with his opinion thereon; and said referee reported that as to the land in question said deceased died intestate, and that (his widow having accepted the provision made for her in said will in lieu of dower, and having waived her interest in said land), the said land descended to said heirs at law.

Exceptions to said report were filed by the appellants; but after hearing upon such exceptions this court, by order at Special Term, bearing date the 6th day of June, 1876, confirmed said report and directed the distribution of said proceeds in accordance therewith. From this last-mentioned order an appeal was taken by the defendants Mary Brewer and Caroline A. Brewer, executrix and trustee as aforesaid.

By the decree of partition of December 24, 1875, directing the sale, certain extra allowances were made to the attorneys of the several parties, and again in the decree of distribution further extra allowances were made to the same attorneys. The latter were objected to on the ground that the power to make any allowances was exhausted by the granting of them in the decree of December 4, 1875.

*Waldo Hutchings*, for the appellants.

*H. S. Anderson* and *Benjamin C. Wetmore*, for the respondents.

BRADY, J.:

There being no doubt that the trust created by the testator was void because it suspended the power of alienation for more than two lives in being, the only question to be determined on this appeal is whether such a trust is legalized and rendered valid by the power coupled with it, authorizing the trustees to sell the trust estate.

This question has not been expressly adjudicated, perhaps, in this State, and may be said to be presented herein for the first time. The argument to sustain it is ingenious, but if it were successful it would validate many trusts that have been declared prohibited and void.

It is based on the proposition that section 14 of the article relating to the creation of estates declares distinctly what is meant by the

suspension of the power of alienation, which is prohibited, namely, "such power of alienation is suspended when there are no persons in being by whom an absolute fee in possession can be conveyed," and that the testator having conferred a valid power of sale, there is a person in being by whom an absolute fee in possession can be conveyed. The answer which seems to meet the question at once, and conclusively, is that the power of sale is possessed by persons in a representative capacity, and is discretionary and limited, because it is for the purposes of the trust only, or, in other words, to make a change in the character of the trust property for reinvestment, and therefore to continue the trust. The statute clearly means persons having an absolute and unqualified, unconditional fee by inheritance or by purchase, which can be conveyed absolutely, not only with reference to the subject of the conveyance, but to the product of its sale. The chancellor said, in *Hawley* v. *James* (5 Paige, 445), "a mere power to exchange lands, whether such exchange is made directly or by means of a sale and new purchase, is not a power to alien the estate within the interest and meaning of the Revised Statutes on this subject." The opinion of the learned referee against the proposition is founded upon this theory, and the further point that if the appellants' doctrine be correct, then by the simple device of a power of sale for the purpose of reinvestment, trust estates can be limited as by the rules of the common law, during any number of lives, notwithstanding the changes made by the Revised Statutes. If the power of sale was absolute, so that when the trustees sold they could pay over the proceeds to the *cestui que trust*, there might be some force in the point taken; but such is not the character of the trust here. The right to sell is part and parcel of the trust for the trust itself, and may or may not be exercised during the life of the trust. It is therefore coequal with it and for it. In *Belmont* v. *O'Brien* (12 N. Y., 405), Justice Hand, in considering the statute of trusts, said: "In most of those cases in our courts, where the sixty-third and sixty-fifth sections were said to have rendered property inalienable, the funds, or some part of it, or the income, was to be held in trust for a period not allowed by law, and in such cases a power of sale and exchange, or of conversion for the same purpose, did not remove the objection of inalienability. But if the purpose be lawful, there can be no objection to a power of sale, under the

express direction of the original owner and grantor given at the time he creates his trust."

Justice DENIO, in *Williams* v. *Williams* (8 N. Y., 525), and BRONSON, J., in *Hawley* v. *James* (16 Wend., 163), as shown by the referee, have expressed themselves to the same effect. These views may be called *dicta*, but they foreshadow the result of judicial investigation, and on a question of construction are authorities. In *McSorley* v. *Wilson* (4 Sand. Ch. [m. p.], 515) we have an adjudication declaring the trusts void, though coupled with the power of sale.

In *Amory* v. *Lord* (9 N. Y., 403, 412, 413) Justice GARDNER said : " In this case the trust which contained a power of sale is void, because it establishes a perpetuity which the law prohibits. The whole estate upon which it was dependent falls within it." See, also, *Field* v. *Field's Executors* (4 Sandf. Ch. [m. p.] 528), where the same result was declared, although the trustees were authorized to sell. It seems to be quite apparent that if the trust be void the property affected by it descends to the heirs at once. (Cases *supra ; Bean* v. *Hockman*, 31 Barb., 78.) If, therefore, the trust falls, the incidental relation of the trustees falls with it. The purpose of the trust being illegal, it would follow as a natural sequence that whatever was done by the trustees to perpetuate it would be invalid also, although the courts protect trustees acting in good faith under trusts assumed to be legal. It is not necessary, however, to pursue this subject further. It seems to be beyond doubt that a power of sale, conferred upon trustees, will not sustain a trust otherwise unlawful. The judgment of the Special Term, on this subject, should, therefore, be affirmed ; the learned referee having made the proper disposition of the questions involved, but the allowances objected to, except for disbursements and referee's fees, must be excluded. No costs of this appeal to either party. Order to be settled by Justice BRADY.

DAVIS, P. J., and DANIELS, J., concurred.

Judgment affirmed, allowances objected to excluded, except for disbursements and referee's fees. No costs of appeal to either party. Order to be settled by BRADY, J.