In the Matter of the Accounting of FRANCES D. WILCOX, as
Trustee under the Will of BETHUEL McCOY, Deceased.

CHARLES B. McCOY, Appellant; JEROME A. CROWLEY, as
Ancillary Executor of WALTER B. SAUNDERS, Deceased, et
al., Respondents.

**Will — trusts — validity of limitations — suspension of power
of alienation — restrictions upon creation of remainders — con-
tingent limitation of remainders in personal property — con-
struction of trust provisions of will.**

Two elementary principles in determining the validity of wills are: *First,*
such validity must be determined not in the light of what has actually
transpired, but from exactly the same point of view from which it
would be regarded had a suit been brought to determine the validity of
the will at the time of the death of the testator, instead of at a subse-
quent period. The validity of a will depends not on what has hap-
pened since the death of the testator, but on what might have happened.
*Second,* in determining the validity of limitations of estates under the
provisions of the Revised Statutes in reference to absolute ownership
and restraint of alienation, it is not sufficient that the estates attempted
to be created may, by the happening of subsequent events, be termi-
nated within the prescribed period, if such events might so happen that
such estates might extend beyond such period. To render such future
estates valid, they must be so limited that in every possible contingency
they will absolutely terminate at such period, or such estates will be
held void.

The Revised Statutes (1 R. S. 723, § 15) provide that "the absolute
power of alienation shall not be suspended by any limitation or condi-
tion whatever for a longer period than during the continuance of not
more than two lives in being at the creation of the estate," excepting
therefrom the single case mentioned in section 16. Section 17 prohibits
the creation of successive life estates to more than two persons in being,
and renders all subsequent life estates limited thereon void. This and
subsequent sections of the statute prescribed some further limitation on
the power to create future estates than the provision that they should
not suspend the power of alienation; imposed an additional restriction
on the power to create future estates in land, and intended to provide
against remoteness of vesting in addition to the provision against
inalienability.

The inhibition on the suspension of the power of alienation is not the sole
rule against perpetuities as to realty, and, therefore, the term "absolute
ownership" as applied to personalty must be interpreted in its ordinary

and natural sense.  The same is suspended where the title of one life
tenant is defeasible in favor of another, and neither one can be said to
possess absolute ownership, even though both are in being at the
time.   .

For a contingent limitation of a remainder in personal property to be
valid the contingency must be such as necessarily to occur within two
lives in being at the death of the testator.

Bethuel McCoy left him surviving three children, William, Charles and
Frances.   A daughter, Maria, predeceased him, leaving a husband and
two children.   He left a will appointing his son Charles McCoy as
executor.   The will contained the following provisions: "I give, devise
and bequeath all the rest, residue and remainder of my estate, both real
and personal, as follows:   *   *   *   and the remaining third thereof to
my said executors in trust for the purpose of paying the income to my
daughter, Frances D. Wilcox, for and during the term of her natural
life, annually, and at her decease I give, devise and bequeath to her
issue, share and share alike, such income, and as each of her said issue
shall attain the age of twenty-one years, I give, devise and bequeath to
it one equal undivided share of the principal of said remaining third;
and in case my daughter, Frances D. Wilcox, shall die, leaving no issue
born to her, which shall attain the age of twenty-one years, then and in
such case said remaining third of my residuary estate I give, devise and
bequeath to my daughter, Maria E. Sanders, and my son, Charles
McCoy, share and share alike forever."  By a codicil the provision in
favor of Maria E. Sanders was modified so as to give her the income of
this share for life, and on her death the principal to her husband and
children.   *Held.* the trust during the lifetime of Frances is valid, and is
readily severable from the ulterior provisions and limitations.

The provision creating a trust in favor of the issue whom Frances might
leave surviving until such issue respectively should reach their majority
is illegal and invalid, in that it might suspend the absolute ownership
of personal property during lives not in being at the death of the
testator.

The gift over being only in case Frances left no issue who should attain the
age of twenty-one years, there might have been issue, some of whom
might arrive at the age of twenty-one and some of whom might fail to
attain that age, in which case the gift over would not take effect.

The gift over was contingent, not vested; but, although contingent, the
legatees were certain and their interests at all times alienable.   The
gift, therefore, in no degree suspended the absolute power of alienation.

The testator died intestate as to the remainder in the fund in controversy
after the death of Frances, and the same passed to his next of kin.

*Matter of Wilcox*, 125 App. Div. 152, reversed.

(Argued October 1, 1908; decided February 9, 1909.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered March 4, 1908, which modified and affirmed as modified a decree of the Cattaraugus County Surrogate's Court settling the accounts of the trustee herein, construing the will of the decedent and directing distribution of his estate in accordance therewith.

The facts, so far as material, are stated in the opinion.

*George H. Ansley* for appellant. The 7th clause of the last will and testament of Bethuel McCoy, deceased, and the codicil thereto dated August 6, 1875, create a ᴜ. which unlawfully suspends the power of alienation and the whole provision is void. (L. 1897, ch. 417, § 2 ; *Schlereth* v. *Schlereth,* 173 N. Y. 444; *Greenland* v. *Waddell,* 116 N. Y. 234; *Post* v. *Hover,* 33 N. Y. 593 ; *Manice* v. *Manice,* 43 N. Y. 303 ; *Benedict* v. *Webb,* 98 N. Y. 460; *Bindrim* v. *Ullrich,* 64 App. Div. 444; *Trust Co.* v. *Kepp,* 52 Misc. Rep. 407 ; *Schettler* v. *Smith,* 41 N. Y. 328 ; *M. T.* ᴜ v. *Sands,* 122 App. Div. 691; *Herzog* v. *T. G. T. Co.,* ʹ7 N. Y. 86.) The residuary clause, or part of it, creating an illegal trust by reason of the suspension of the power of alienation beyond the prescribed period, is void, and the ·         es not go to the parties who are the beneficiaries u              invalid trust, but to the next of kin of the testator. (         ｊ v. *Hover,* 33 N. Y. 593 ; *Benedict* v. *Webb,* 98 N. Y. 46ᴜ ; *Brown* v. *Quintard,* 177 N. Y. 75.)

*Rodney R. Crowley* and *A. R. Conley* for Jerome A. Crowley, as executor, et al., respondents. It is conceded that the provisions of the trust in favor of possible issue of Frances D. Wilcox are invalid; but those invalid provisions may and should be eliminated so as to give the other portions of clause 7 of the will and codicil No. 2 effect, for the purpose of preserving the intention of testator. (*De Kay* v. *Irving,* 5 Den. 646 ; *Kane* v. *Gott,* 24 Wend. 641 ; *Williams* v. *Williams,* 48 N. Y. 525; *Oxley* v. *Lane,* 35 N. Y. 349 ; *Booth* v. *Kehoe,*

71 N. Y. 341; *Locke* v. *F. L. & T. Co.*, 140 N. Y. 143; *C. C. Bank* v. *Payne*, 164 N. Y. 256; *Kalish* v. *Kalish*, 166 N. Y. 368.)   The testator directs what shall be done in case of future issue to his daughter, and then clearly directs what shall be done if such daughter dies without issue.  This presents a proper case for elimination entirely of the first direction as repugnant to law, and the establishment of the second direction as within the law. (*Schettler* v. *Smith*, 41 N. Y. 328; *Hascall* v. *King*, 162 N. Y. 152; *Fowler* v. *Depau*, 26 Barb. 236; *Savage* v. *Burnham*, 17 N. Y. 561; *Post* v. *Hover*, 33 N. Y. 593; L. 1896, ch. 541, § 41; L. 1897, ch. 417, § 2; *Hennessy* v. *Patterson*, 85 N. Y. 91; *Tiers* v. *Tiers*, 98 N. Y. 368; *Cross* v. *U. S. T. Co.*, 131 N. Y. 330.)

*W. G. Laidlaw* and *A. M. Laidlaw* for Margaret L. Hart et al., respondents.  The remainder over to the testator's son, Charles, and his daughter, Maria Saunders, is an alternative estate.  By the express terms of the will, this alternative estate took effect upon the death of Frances leaving no issue " born to her ; " the fact that the prior provisions of the will in favor of the possible issue of Frances is invalid in no manner defeats this alternative estate. (*Fowler* v. *Depau*, 26 Barb. ; Chaplin on Susp. of Power of Alienation, §§ 479–499; *Schettler* v. *Smith*, 41 N. Y. 328; 1 Jarman on Wills [5th Am. Ed.], 285.)

CULLEN, Ch. J.   Bethuel McCoy died testate in 1874.  He left him surviving three children, William McCoy, Charles McCoy and Frances D. Wilcox.  A daughter, Maria E. Sanders, predeceased him, leaving a husband and two children. This controversy relates to the validity and effect of the seventh clause of his will, which is as follows : " I give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal, as follows : *   *   *  and the remaining third thereof to my said executors in trust for the purpose of paying the income thereof to my daughter, Frances D. Wilcox, for and during the term of her natural life,

annually, and at her decease I give, devise and bequeath to her issue, share and share alike, such income, and as each of her said issue shall attain the age of 21 years, I give, devise and bequeath to it one equal undivided share of the principal of said remaining third, and in case my said daughter, Frances D. Wilcox, shall die, leaving no issue born to her, which shall attain the age of 21 years, then and in such case, said remaining third of my residuary estate, I give, devise and bequeath to my daughter, Maria E. Sanders, and my son Charles McCoy, share and share alike forever." By the will the testator's son Charles McCoy was appointed executor thereof.

By one of the codicils the provisions of his will in favor of Maria E. Sanders was modified so as to give her the income of this share for life, and on her death the principal to her husband and children. Maria, as already said, died before the testator. The will was proved and the executor qualified. On the settlement of the executor's accounts in 1880 it was found that the fund for the benefit of Frances D. Wilcox under the seventh clause of the will amounted to $7,512. The executor was directed to invest said sum and apply the income to said Frances during her life, and upon her death to distribute it in accordance with the provisions of the will. The executor died in 1898, when the beneficiary Frances was appointed trustee of the fund. She received the income during her lifetime. On her death in January, 1906, the executor of her will instituted these proceedings for the settlement of her accounts as trustee.

Frances was married at the decease of her father, the testator. She left no issue her surviving, having had but one child, who was born March 6th, 1859, and died on the 3rd of June following. The contest is between Charles B. McCoy and Frank G. McCoy, the children of the testator's son William McCoy, who contend that the whole of the seventh clause of the will is invalid and that the fund passed, as in case of intestacy, and the legatees to whom by that clause the fund is bequeathed on the contingency that Frances should leave no issue who should reach majority. These legatees contend that

the gift over is valid regardless of the invalidity of any provisions directing the prior disposition of the fund. The surrogate decided in favor of the legatees. That decision has been affirmed by the Appellate Division by a divided court, and the next of kin now appeal to this court.

It is conceded by both the learned courts below that the provision creating a trust in favor of the issue whom Frances might leave surviving until such issue respectively should reach their majority was illegal and invalid, in that it might suspend the absolute ownership of personal property during lives not in being at the death of the testator. This conclusion was undoubtedly correct (1 R. S. p. 723, § 15), though it would have been valid in the case of real estate if it could be assumed that the trust was several as to the share of each issue. (*Manice* v. *Manice*, 43 N. Y. 303.) The trust during the lifetime of Frances was plainly valid and is readily severable from the ulterior provisions and limitations. (*Tiers* v. *Tiers*, 98 N. Y. 568.) But it was also held that the invalidity of the provision for the issue of Frances did not affect the validity of the gift over. It was considered that such gift being made to named beneficiaries in being at the death of the testator, and the interests of such persons being at all times susceptible of alienation by them, did not suspend the absolute ownership of the property for any period. The learned judge who wrote for the Appellate Division said that the estates provided for by the will were alternative and that as the first and invalid one in favor of the issue of Frances had not taken effect, the second was in no way affected by such invalidity. In one sense the will provided for alternative dispositions of the property, but only in the sense that every gift over may be said to be alternative on the failure of the contingency on which the gift is dependent to occur. The dispositions were not, however, alternative in the ordinary use of that term. If the learned court intended to assert that the gift over by itself implied alternatives, to wit, a gift on the contingency that Frances died without issue her surviving — a gift that would have been unquestionably good — and a gift on the contin-

gency that no issue that she might leave should reach majority, such a doctrine seems to be in direct opposition to the decided cases.

It is said by Professor Gray in his work on Perpetuities (§ 331): "Very often, indeed generally, a future contingency which is too remote may in fact happen within the limit prescribed by the rule against perpetuities, and a gift conditioned on such contingency may be put into one of two classes according as the contingency happens or does not happen within those limits; but unless this division into classes is made by the donor, the law will not make it for him, and the gift will be bad altogether. * * * (§ 331.) This is the law even when the division is of the most obvious character. Thus a gift to B, if no child of A reaches twenty-five is bad, although A dies without children; while if the gift over had been if A dies without children, or if his children all die under twenty-one, then on A's death without children the gift over would have taken effect." It was said in *In re Bence* (L. R. [3 Ch. Div. 1891] 242, 251), alluding to another decision: "The case is, therefore, no authority for the proposition that every gift over may be analyzed into as many events as are included within its language, and be held good or bad as the events happen."

It is in this respect that the case before us differs essentially from that of *Schettler* v. *Smith* (41 N. Y. 328), relied upon by the Appellate Division. In that case the testator himself expressly made alternative gifts, the first upon the death of the widow of his son if the son should leave a widow, which was held bad, because such widow might be a person not in being at the death of the testator, and the other in the case of the death of the son without a widow, or of his death without issue, in either of which contingencies the gift over was good. So in that case the gift over upon the death of the son leaving a widow was held void in entirety, though it was entirely possible that the son's widow might be a person in being at the death of the testator. At this point we must recall two elementary principles in determining the validity of

wills. *First*. Such validity must be determined not in the light of what has actually transpired, but from exactly the same point of view from which it would be regarded had a suit been brought to determine the validity of the will at the time of the death of the testator, instead of at a subsequent period. That is to say, the validity of a will depends not on what has happened since the death of the testator, but on what might have happened. *Second*. " In determining the validity of limitations of estates, under the above statutes, (the provisions of the Revised Statutes in reference to absolute ownership and restraint of alienation) it is not sufficient that the estates attempted to be created may, by the happening of subsequent events, be terminated within the prescribed period, if such events might so happen that such estates might extend beyond such period. In other words, to render such future estates valid, they must be so limited that in every possible contingency, they will absolutely terminate at such period, or such estates will be held void." (*Schettler* v. *Smith*, p. 334, *supra*.)

The first question is, what is the effect of the invalidity of the trust which the testator attempted to create or continue during the minority of the issue of his daughter Frances. The words of the will are " and as each of her said issue shall attain the age of 21 years, I give, devise and bequeath to it one equal undivided share," etc. The general rule is that such terms, although apparently making the gift depend on a contingency, should be construed as applying merely to the futurity of possession. So also the presence of a gift over in case of failure to attain the age of twenty-one years confirms the construction that the gift is vested. It was decided in *Manice* v. *Manice* (*supra*), where the trust during the minority of the issue of the daughter was held invalid as to personalty, that such personalty vested in the daughter's issue on the death of their mother. In this case, therefore, on the death of the testator's daughter Frances her issue would have been entitled to the principal of the trust fund subject only to the limitation in favor of the testator's two children Maria

Sanders and Charles McCoy if that limitation is valid. It must be here remembered that the gift over is only in case of Frances leaving no issue who should attain the age of twenty-one years, and that there might have been issue some of whom might arrive at the age of twenty-one years and some of whom might fail to attain that age, in which case the gift over would not take effect.

The remaining question is as to the validity of the gift over. That this gift was contingent, not vested, was settled by the decision of this court in *Hennessy* v. *Patterson* (85 N. Y. 91). But though contingent, the legatees were certain and their interests at all times alienable. It must, therefore, be conceded that the gift did in no degree suspend the absolute power of alienation. But the question remains did it suspend the absolute ownership of personal property for more than two lives in being, which is the rule prescribed by the Revised Statutes. (1 R. S. 723, § 15.)

At common law the suspension of the power of alienation was no factor of the rule against perpetuities either as to real estate or personalty. That rule was against remoteness in vesting and certain future estates were held bad for remoteness, though they did not affect the power of alienation. (Gray on Perpetuities, §§ 1–4, 268, *et seq.*) That rule was that a future estate must vest, if at all, within lives in being and the term of twenty-one years. Under our Revised Statutes a new rule was substituted for that which had been evolved at common law by the courts and with us, of course, the only question is what does our statute forbid. In the first place it substituted two lives in being for any number of lives in being, and as to real estate a minority instead of a definite period of twenty-one years and for the prevention of perpetuities in real estate beyond the prescribed limit the first and chief enactment of the statute is found in sections 13, 14 and 15 of chapter 1, part 2 of the Revised Statutes, the last of which provides that " the absolute power of alienation, shall not be suspended by any limitation or condition whatever, for a longer period than during the continuance of not more than two lives in

being at the creation of the estate, except in the single case mentioned in the next section." That it is the application of this provision which has most frequently come before the courts in the determination of the legality of testamentary dispositions is unquestionable, and this fact has led at times to the assertion that since the enactment of the Revised Statutes there is only one rule against perpetuities in this state and that is that the absolute power of alienation shall not be suspended for more than two lives in being. There are, to me, two unanswerable objections to such contention. The revisers were men of great erudition and professional experience. They understood thoroughly the common-law rule under which they had been educated and had practiced and also the result of the alterations in that rule which they intended to effect. Section 17 prohibits the creation of successive life estates to more than two persons in being and renders all subsequent life estates limited thereon void. It was common knowledge then, as now, that no number of legal life estates of persons in being could suspend the absolute power of alienation for a single instant of time. At least in this respect the revisers intended to enact some further limitation on the power to create future estates than the provision that they should not suspend the power of alienation.

Secondly, we have the provisions of sections 18 to 24 with reference to the creation of remainders. The last of these sections prescribes, " subject to the rules established in the preceding sections of this Article, a freehold estate as well as a chattel real, may be created, to commence at a future day ; an estate for life may be created, in a term of years, and a remainder limited thereon ; a remainder of a freehold or chattel real, either contingent or vested, may be created expectant on the determination of a term of years ; *and a fee may be limited on a fee,* upon a contingency, which, if it should occur, must happen within the period prescribed in this Article." (Id. § 24.) If the revisers intended, as is claimed, to establish the single rule that the power of alienation should not be suspended for more than two lives in being, it is

impossible to understand why these elaborate and minute provisions for the creation of remainders were enacted. Sections 14 and 15 covered the whole subject. Their provisions were absolute and unqualified that the absolute power of alienation should not be suspended by any limitation or condition whatever for longer than the prescribed period. If suspension of the power of alienation was the only rule, what possible object was to be gained by the provisions of the later sections? They added nothing to the efficacy of the former inhibitions, and we can hardly credit the idea that the revisers were under delusion as to their necessity. It seems to me clear that the revisers did intend, so far as remainders were concerned, in addition to the provision against inalienability, to provide against remoteness of vesting which, as already said, was the test of validity under the common-law rule, with which they were familiar. It may be said that this view also accords with that entertained by Mr. Chaplin in his text book on Suspension of the Power of Alienation, where he says (p. 1): " The provisions of the Revised Statutes furnish two rules concerning the alienability and the vesting of estates. These rules may be stated as follows :

" Rule I. Alienability. The power of conveying the absolute fee, in possession, shall not be suspended beyond the statutory period. * * *

" Rule II. Vesting. Estates in remainder shall be so limited that within the statutory period, if ever, they must vest in interest.

" This rule is thus seen to apply to only one class of future estates, namely, ' remainders ; ' but to insist not only on absolute alienability, but also on vesting, which is a broader term, and (except in certain cases of vesting in trust) includes alienability."

That section 17 imposes an additional restriction on the power to create future estates in land is settled by the decision of this court in *Purdy* v. *Hayt* (92 N. Y. 446, 451), where, in giving effect to it, Chief Judge ANDREWS said: " The prohibition against the creation of more than two successive life

estates in the same property has no necessary connection with the law of perpetuities. There is no suspense of the power of alienation of land by the creation of successive life estates therein unless they are contingent. Any number of successive vested life estates may be created without violating the statute of perpetuities. The prohibition against creating more than two successive life estates in the same property applies to such estates, whether vested or contingent." It is to be observed that Chief Judge ANDREWS remarks that this statutory provision has no connection with the rule against perpetuities. But it is very apparent that in this statement he confines the rule of perpetuities to the law restricting the suspension of the power of alienation. I have used the term in the broader sense as comprehending any limitation on the power of creating future estates. This, however, is a mere matter of nomenclature, of no importance. The point is that the Revised Statutes make at least one additional limitation on such power. The question is whether there are not also other limitations, call them what you may.

Section 24, already quoted, concludes " and a fee may be limited on a fee, upon a contingency, which, if it should occur, must happen within the period prescribed in this Article," i. e., within two lives in being. This statutory authority for limiting a fee upon a fee is necessarily exclusive; otherwise, why should the statute declare that the contingency *must* occur within the specified period ? It has no necessary connection with the provision restricting the suspension of the power of alienation. It is under this provision that the present case would fall if it were real estate. I have said that the remainder in the present case would on the death of Mrs. Wilcox vest in her issue absolutely, subject to the gift over, but if I err in this view (See *Greenland* v. *Waddell*, 116 N. Y. 234) the only result would be that the remainder vested in the next of kin subject also to that gift. Under either view we have the case of a remainder in fee limited upon a remainder in fee upon a contingency which might not happen within the period of two lives in being.

Though this case is governed by the statutory provisions
relative to estates in personal property, I have discussed the
provisions ·relating to real estate, 1st, because by sections 1
and 2 of the Revised Statutes (1 R. S. 773) relative to expect-
ant estates in such property, it is provided that " The absolute
ownership of personal property shall not be suspended by any
limitation or condition whatever, for a longer period than during
the continuance and until the termination of not more than
two lives in being at the date of the instrument containing
such limitation or condition ; or, if such instrument be a will,
for not more than two lives in being at the death of the
testator. *In all other respects, limitations of future or con-
tingent interests in personal property* " *shall be subject to the
rules governing future estates in land.* And, 2nd, if it were
established that the sole statutory restriction on the power to
create estates in realty was that the creation of such estates
should not suspend the absolute power of alienation ·beyond
the prescribed period, there would be force in the position
that the absolute ownership of personal property was not sus-
pended when there were persons in being, no matter in what
manner or what the nature of their interests, who acting con-
jointly could transfer an indefeasible title. But . if the
proposition is established, as I think it is, that the inhibition
on the suspension of the power of alienation is not the sole
rule against perpetutities as to realty, it is evident that the
term " absolute ownership " as applied to personalty must be
interpreted in its ordinary and natural sense, and that the
same is suspended where the title of one is defeasible in favor
of another, and that neither one can be said to possess absolute
ownership, even though both are in being at the time. ✳ ✳ ✳

I have said that testamentary dispositions have been usu-
ally attacked in the courts of this state as suspending the
power of alienation, but there are some cases in which the
limitation of estates has been condemned, even where the
power of alienation was not unduly suspended. *Oxley* v.
*Lane* (35 N. Y. 340) was a suit for the construction of a will.
The provisions of that instrument, so far as the question

before us is involved, were these : By the second clause of his will the testator gave his farm to his wife in trust for the support of his minor children until the youngest became of age. By the seventh clause he devised the residuary estate, real and personal, subject to certain bequests, to his three sons, share and share alike, but directed that the property should not be divided or aliened until twenty-five years after his death. By the eighth clause he directed that if any of his children should die before the period of distribution without issue, the share of the child so dying should be divided equally among his other children. After holding void the provision forbidding the alienation of the estate during twenty-five years from the testator's death, it was further held that the ulterior limitations that the share of the child dying before the time of distribution should pass to the survivors, was also void.

In *Knox* v. *Jones* (47 N. Y. 389) the testator gave his residuary estate in trust to apply the income to his brother William Jones during life ; after his death to divide the income between the testator's two sisters, Catharine and Georgiana, during their lives, and on the death of the one, the whole to the survivor, and on the death of the survivor, the principal to the child or children of Georgiana ; in case Georgiana died without leaving issue, then to Columbia College. The trust was held bad for continuing for three lives. The ultimate limitation in favor of the children or to Columbia College, if there should be no children, was also held bad as " too remote, being suspended until the actual termination of three lives in being." It will be noted that the gift of the ultimate remainder did not and could not suspend the absolute power of alienation beyond the life of Georgiana, for upon her death, if she left children, the legatees would be certain, whether her brothers or sister were living or not. Even if it be assumed that only those children who might survive the three equitable life tenants would be entitled to take the remainder, still all of her children, in conjunction with Columbia College, might at any

time after the death of Georgiana transfer an absolute title to the remainder. The gift over, therefore, could suspend the absolute power of alienation only during one life, to wit, that of Georgiana, a period permitted by the statute. It was condemned, not as illegally suspending the power of alienation, but as being too remote. If it be urged that the decision really proceeded on the ground that the gift only took effect on the termination of a trust invalid because it illegally suspended the power of alienation, that same ground would be fatal to the validity of the gift over in the present case, for it, equally with the gift in *Knox* v. *Jones*, was only to take effect at the termination of an invalid trust.

In *Robert* v. *Corning* (89 N. Y. 225) the testator authorized the executor to sell and dispose of his residuary estate and divide in specified parts its proceeds among his children named, and in the case of the death of any child before the time of distribution, then to its issue. By a subsequent clause of his will he authorized his executors, in view of the then existing depression in real estate, to exercise their discretion as to the time they should sell the same, not longer than three years from his decease, and meanwhile all the rents and profits of his estate until it was finally distributed, he directed his executors to divide semi-annually among those to whom the bequests were made. The validity of these provisions was attacked, first, as suspending the power of alienation of real estate for a period not dependent on lives. The court held that as the power of sale might be exercised at any time by the executors, there was no such restraint. The court, through Chief Judge ANDREWS, after disposing of this objection, said : " The remaining question on this branch of the case relates to the limitation of interests in the proceeds of the sale to be made by the executors. There was, by the will, an absolute conversion of the real estate into personalty, as of the time of the testator's death, and the several distributees took their interests as money and not as land. Were these interests so limited as to vest the absolute ownership within or at the expiration of not more than two lives in being at the death of

the testator?" (p. 339).   The learned judge then proceeded to show that by the will, on the death of any child leaving issue before distribution, the share of the child dying would immediately vest in its issue, or if there were no issue, it would go to its next of kin.   It was, therefore, held that the will was good in this respect.   I am at a loss to see how this discussion was material or necessary if the validity of the will was to be determined solely from the point of view of how far it restrained the power of alienation.   At any time the executors might distribute the personalty and proceeds of the realty, just the same as they might at any time sell and convey the realty.   If the continuous possession of this power was sufficient to uphold the validity of the will as to one class of property, it would have been equally effectual for that purpose to uphold it as to the other; that is, assuming the suspension of the power of alienation was the only rule to be considered. Evidently the court in the case cited did not proceed on any such assumption.

The question again came up in *Henderson* v. *Henderson* (113 N. Y. 1).   The will in that case, except in one respect, was almost a literal reproduction of the Robert will.   The variation was this, by a separate clause the testator further provided : " That, if any of my said children shall die leaving issue, then the child or children (who shall be living at the time of such partition) of such deceased child of mine shall take and have the share or portion which the parent would have taken if living."   The General Term held that this proviso invalidated the will, for the reason that under its terms the children of a child of the testator dying before the partition would not have absolute ownership of the share of its parent, but as to each of said children a share might by its death prior to the partition be divested in favor of the surviving children.   This court on appeal reversed the judgment of the General Term, not on the theory that such provision was valid, but on the ground that though void, it should be cut off and disregarded.   Judge GRAY there said: " Under the statute every future estate, which may not *vest* within the

period of two lives in being at the time of its creation, is void, as is any limitation or condition, by which the absolute owner-ship of personal property may be suspended beyond the specified period of time" (p. 15). Yet in that case it is entirely apparent there was no suspension of the power of alienation as to the share of any child, except during the life-time of that child, for on its death all its issue by joining together could transfer or convey an absolute title.

Finally, we have the case of *Greenland* v. *Waddell* (116 N. Y. 234), which it seems impossible to distinguish in prin-ciple from the case at bar. In that case the testatrix gave the income of a trust fund to her sister during the joint lives of her said sister and her (the sister's) husband, and upon the death of the said sister before her said husband leaving lawful issue, then the income was to be applied to the maintenance and support of such child or children until the youngest child should arrive at the age of twenty-one years, and at such time to pay over and transfer to the children that should then be living the whole of the trust fund. But on the death of all of said children before arriving at such age, or upon the death of the sister without leaving issue, then the principal was to be paid to a brother of the testatrix and another sister, to be equally divided between them. This court held that both the gift of the remainder to the children and the gift over of that remainder to the testatrix's brother and sister, in case none of the children reached majority, were void as suspending the absolute power of alienation. Judge BRADLEY, writing for the court, said : " The consequence seems to be that the direc-tion of the testatrix, by her will, to pay the fund to such children in the event mentioned, or on their failure to arrive at the age of majority to pay it to Mr. Boerum and Mrs. Vanderveer, was in contravention of the statute and void " (p. 245). This decision was cited with approval in *Schlereth* v. *Schlereth* (173 N. Y. 444).

It may be well to consider to what the claim, that the sus-pension of the power of alienation is our sole rule against perpetuities, might lead. A testator might give his estate to

a trust company for a thousand years, in trust, to apply the income to his eldest son during life, and on his death to the eldest son of that son, and so on indefinitely during the whole of the trust term, and at the expiration of such term to transfer the corpus to the testator's eldest male issue then living descended from him in the main line. Standing alone this testamentary scheme would be plainly bad, because the trust would render the property inalienable during the trust term which might extend for lives not in being. But if the testator should add to the provisions suggested. the further provision that the trustee should have the power at any and all times during the trust term, with the consent of the then existing equitable life tenant, and the person in being who at the time would be presumptively entitled to the next life estate, to terminate the trust and transfer the proceeds to such persons, would the scheme then illegally suspend the power of alienation ? It seems to me that under the decisions in the *Robert* and *Henderson* cases plainly it would not, for, as said by Chief Judge ANDREWS in the earlier case : "When a trust for sale and distribution is made, without restriction as to time, and the trustees are empowered to receive the rents and profits, pending the sale for the benefit of beneficiaries, the fact that the interest of the beneficiaries is inalienable by statute, during the existence of the trust, does not suspend the power of alienation, for the reason, that the trustees are persons in being, who can, at any time, convey an absolute fee in possession." (89 N. Y. p. 236.) There would not be an instant of time from the death of the testator during which, by the conjoint action of the trustee and the two persons named, absolute title to the property, whether real or personal, could not be conveyed. In my judgment the scheme would be bad because the remainders limited on the trust term would not vest within the statutory period. Possibly also the statutory provision abolishing estates tail might apply to equitable interests and condemn the scheme I have suggested, and also possibly it might be condemned by the provisions of section 17 (1 R. S. p. 723) forbidding the creation of more than two successive life

estates, although it seems settled by authority that this section refers to legal estates, not to equitable ones. (*Amory* v. *Lord*, 9 N. Y. 403; *Shipman* v. *Rollins*, 98 id. 311, 330; *Woodruff* v. *Cook*, 61 id. 638.) However this may be, it is sufficient to say that if the only rule against perpetuities is, as claimed, the inhibition against the suspension of the absolute power of alienation, the scheme suggested would be good, and a testator might tie up property for a period far beyond that contemplated by the statute by the simple device of giving a power to terminate the trust which the testator might hope and not unnaturally expect would not be exercised until after a long period.

I am, therefore, of opinion that for a contingent limitation of a remainder in personal property to be valid, the contingency must be such as necessarily to occur within two lives in being at the death of the testator. The limitation contained in this will on the death of all issue of the testator's daughter before arriving at the age of twenty-one years is, therefore, void.

The condition in which this case is presented to us creates some embarrassment. Any estate or interest in property as to which the testator dies intestate passes to his next of kin or heirs at law, depending on the character of the property, who are to be ascertained at the time of the testator's death. (*Clark* v. *Cammann*, 160 N. Y. 315.) The appellant here, Charles B. McCoy, claims as one of the heirs at law of William McCoy, a son of the testator who survived the latter. Any interest in the fund, therefore, passed to William McCoy's personal representatives (who are not parties to this proceeding) and not to his heirs at law. It is possible that the fund may have proceeded from the sale of real estate and, therefore, should be treated as such, but nothing of that kind appears in the record before us. But if the fund should be treated as real estate it would not affect the question before us, for, as already said, the gift over is not of the share of any of the issue of Frances upon its death before reaching majority, but on Frances not leaving any issue that

might attain full age. The gift, therefore, would not fall within section 16, p. 723, of the Revised Statutes, that of a single minority.

The decree of the surrogate and order of the Appellate Division should be reversed, and judgment rendered that the testator died intestate as to the remainder in the fund in controversy after the death of Frances, and that the same passed to his next of kin, with costs to all parties appearing in this court, payable out of the fund.

EDWARD T. BARTLETT, J. (dissenting). In the view I take of this case there is no occasion to consider the question whether the learned revisers of the statutes intended, when providing for the creation and division of estates, to establish the single rule that the power of alienation should not be suspended for more than two lives in being, or, in addition, to provide, as to remainders, against remoteness of vesting, following the rule of the common law. I, therefore, express no opinion in regard to the question.

In the seventh subdivision of the testator's will he divided his estate into three shares and dealt with each separately. The disposition of the third share is challenged; the courts below have held it valid after striking therefrom a void provision, and the judgment entered on that decision is now before us for review.

The seventh subdivision of the will relating to the third share reads as follows : "And the remaining third thereof to my said executor in trust for the purpose of paying the income thereof to my daughter Frances D. Wilcox for and during the term of her natural life, annually, and at her decease, I give, devise and bequeath to her issue share and share alike such income, and as each of her said issue shall attain the age of twenty-one years, I give, devise and bequeath to it one equal undivided share of the principal of said remaining third, and in case my said daughter Frances D. Wilcox, shall die leaving no issue born to her which shall attain the age of twenty-one years, then and in such case said remaining third

of my residuary estate I give, devise and bequeath to my daughter, Maria E. Sanders, and my son Charles McCoy, share and share alike forever."

It is conceded by all that the provisions made for the issue of testator's daughter, Frances D. Wilcox, attaining the age of twenty-one years are void on their face, as illegally suspending the absolute ownership of personal property. The contention of the respondents, which has been sustained by the courts below, is that the gift over to testator's daughter Maria and son Charles, share and share alike, if the daughter Frances died leaving no issue, is valid as an alternative bequest.

The Real Property Law (Laws of 1896, chap. 547, § 41) provides: "Two or more future estates may be created to take effect in the alternative, so that if the first in order fails to vest, the next in succession shall be substituted for it, and take effect accordingly."

The chronology of this case sheds much light on the intention of the testator. He executed his will in August, 1872; at that time his daughter Frances was married; a child of this marriage died in 1869, aged three months; Frances was childless from 1869 until her death in January, 1906, a period of nearly forty years. When the will was executed in 1872, the testator was undoubtedly impressed with the idea that ordinary prudence dictated that he should provide a gift over, an alternative disposition of the residue, which embraced one-third of his residuary estate, in the event of his daughter dying without issue. The testator was certainly justified in assuming the strong probability was that his daughter would die without issue. I do not rest my opinion on the assumption that the gift over, by itself, implied alternatives. The provision as to the issue of Frances living and attaining majority was absolutely void and of no effect. With this void provision lopped off, the will could stand as providing that in case the testator's daughter Frances died without issue, the gift over should take effect. The greater included the less.

Without regard to the void provision, the testator discloses the clear intention to give to his daughter Frances the income

of one-third of his estate for life, and if she shall die childless he gave to his daughter Maria and his son Charles the principal of the residuary estate. The intention of the testator is clear and unmistakable — to provide for the disposition of the residuary estate in case his daughter Frances died childless. The statute already cited was, in my opinion, designed to cover just such a case as is here presented.

It has been many times said, judicially, that the intention of the testator is sought after by a court of equity even in wills drawn by unlearned men, where inadequate and inappropriate language has been employed, in order that the desire of the testator in regard to the final disposition of his property after he has passed away should not be defeated.

Two distinct provisions are found in this will when properly construed in the light of testator's clear intention ; *first,* the death of Frances without issue ; *second,* Frances having issue who should attain the age of twenty-one years. The first is valid ; the second is void and of no effect.

The decree of the surrogate and order of the Appellate Division should be affirmed. I dissent from the decision about to be made.

VANN, WERNER, HISCOCK and CHASE, JJ., concur with CULLEN, Ch. J. ; EDWARD T. BARTLETT, J., reads dissenting opinion ; HAIGHT, J., absent.

Ordered accordingly.