### CARRIER v. CARRIER et al.

(Supreme Court, Appellate Division, Fourth Department. April 28, 1915.)

1. PERPETUITIES ⊕⇒7—SUSPENDING ABSOLUTE OWNERSHIP—TRUST FUND.

A tripartite agreement between a husband, a wife, and a trust company, whereby the husband established a fund for the maintenance of himself, his wife, and a daughter, "to provide against the contingencies of business, and to provide for the welfare of their two daughters," one of whom died soon thereafter, seeking to vest the legal title in the trustee, but declaring that the trustee should not be responsible for the execution of a trust, save for the preservation of trust moneys in its hands, until the death of the husband, and that the husband should retain an absolute power of investment and management of the funds during his lifetime, might suspend the absolute ownership of the fund for a longer

⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

period than during the continuance of two designated lives in being at the date of the agreement, contrary to Personal Property Law (Consol. Laws, c. 41) § 11, and hence was invalid.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 48, 54, 55; Dec. Dig. ☞7.]

2. PERPETUITIES ☞7—AGREEMENT—ENFORCEMENT.
   Such provisions were so interdependent that no one of them was enforceable as a matter of right at the suit of any party claiming an interest in the fund under the agreement.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 48, 54, 55; Dec. Dig. ☞ 7.]

3. TRUSTS ☞53—ESTOPPEL TO ATTACK—PREJUDICE.
   In a wife's suit upon such agreement, where the facts did not show that the relations, the situation, or the rights of the parties had been in any way changed, surrendered, or modified, in reliance upon the validity of the contract or the acts of any party thereunder, so that prejudice would result from a present assertion of the invalidity of the agreement, plaintiff could not claim that the husband and the trust company, for the purposes of the action, were estopped from asserting its invalidity.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 73; Dec. Dig. ☞53.]

4. PERPETUITIES ☞7—INVALIDITY—AGREEMENT AS TO VALIDITY.
   A tripartite trust agreement between husband, wife, and a trust company, invalid as in violation of the rule against perpetuities, could not be validated by any action or agreement of the parties interested while the conditions upon which its invalidity was predicated remained unchanged.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 48, 54, 55; Dec. Dig. ☞7.]

5. TRUSTS ☞54—VALIDITY—ADMISSION.
   In an action by the wife on a tripartite trust agreement between her husband, herself, and a trust company, for benefit of herself and daughter, under which the fund was to be managed and invested by the husband, a finding that during the trial counsel for the defendant admitted that the agreement was valid, limited in effect by the condition that the agreement should not be held to preclude his right to manage the fund, and in view of his statements on cross-examination showing that he had intended to have, and thought that he had, complete control of the fund, was not an admission of the validity of the agreement, except upon such condition.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 74; Dec. Dig. ☞54.]

Appeal from Equity Term, Erie County.

Action by Annie O. Carrier against Cassius M. Carrier and others. From a judgment for plaintiff, and from an order granting the plaintiff an extra allowance of $2,000, the defendants appeal. Judgment reversed, except so far as the provisions for the payment from the fund of $400 to the special guardian of the infant defendant, and judgment dismissing the complaint directed.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAMBERT, and MERRELL, JJ.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Rogers, Locke & Babcock, of Buffalo (Charles B. Sears and Ansley W. Sawyer, both of Buffalo, on the brief), for appellants.

Moot, Sprague, Brownell & Marcy, of Buffalo (Adelbert Moot and Helen Z. M. Rodgers, both of Buffalo, on the brief), for respondent Annie O. Carrier.

Thomas R. Wheeler, of Buffalo, guardian ad litem, for respondent Frances Elise Carrier.

PER CURIAM. Plaintiff's cause of action is founded on a tripartite trust agreement, dated July 31, 1903, made by the defendant Cassius M. Carrier, party of the first part, the plaintiff, Annie O. Carrier, party of the second part, and the defendant the Fidelity Trust Company of Buffalo, party of the third part, thereto. Cassius M. and Annie O. Carrier are husband and wife, and the defendant Frances Elise Carrier is their child. It appears that Cassius M. Carrier furnished practically the whole of the fund with which the agreement is concerned. The fund thus established was a voluntary settlement thereof for the purposes of the agreement. Though by the terms of the agreement the legal title to the fund was to be vested in the Fidelity Trust Company as trustee, yet it was further provided that the trustee "should not be responsible to anybody or in any manner for the execution of the trust hereby created, saving with respect to the safe preservation of any moneys in its hands belonging to the trust, until the death of the party of the first part." One of the purposes of the agreement was that the income of the fund was to be used for the maintenance of the settlor's family, then consisting of himself, his wife, their child, above named, and another daughter, who died some months after the agreement was made. Further expression of the purposes of the agreement appears in the recitals thereof as follows:

"Whereas, the parties of the first and second parts desire to make certain provisions to provide against the contingencies of business and to provide for the welfare of their two daughters; * * * and whereas, the party of the first part is willing to create a fund for that purpose, but desires to retain a power of investment and management of the fund so created as long as he shall live," etc.

Though by the agreement it is sought to vest the legal title to the fund in the trustee, satisfaction of the desire of the settlor expressed in the foregoing quotation, "to retain a power of investment and management of the fund" during his life, is amply provided for by express provisions of the agreement, which, among other things of like tenor, direct that the fund "shall at all times during his lifetime be managed and controlled" by him; he shall attend to the investment of the fund, "and in the matter of investment his discretion shall be absolute and uncontrolled; he shall not be limited in respect to the nature of investments by executors or trustees, and the trustee shall follow his directions with regard to investments in every particular and without question or demur." The effect of the agreement in this regard is as stated in the brief of counsel for respondent Annie O. Carrier, as follows:

"The provisions of the agreement are such that, although the trust company is nominally appointed trustee, the settlor of the trust retains the management of the fund during his life, and is the real trustee."

The judgment appealed from, to quote again from the same brief, "practically removes Mr. Carrier as manager of the trust, and requires the trust company to keep the corpus of the trust in its custody, and to give notice to Mrs. Carrier before making any investment other than those permitted by law to be made by executors and trustees."

[1] It is apparent that this judgment, which directs the manner in which the agreement is to be executed, cannot be sustained unless the agreement is valid, at least as to the appellants, to an extent necessary to support its provisions. Our examination of the agreement leads us to the conclusion that its effect may be to suspend the absolute ownership of the fund provided for therein for a longer period than during the continuance of two designated lives in being at the date of the instrument. For that reason, if for no other, it is on its face invalid. Section 11 of the Personal Property Law (Consol. Laws, c. 41; Laws 1909, c. 45); Matter of Wilcox, 194 N. Y. 288, 295, 87 N. E. 497.

[2] We conclude, further, that its provisions are so interdependent that no one of them is enforceable as a matter of right at the suit of any party claiming an interest in the fund under the agreement. The respondents, while not conceding the invalidity of the agreement. further insist that even if it, standing by itself, be invalid, yet appellants are estopped, at least for the purposes of this action, from asserting its invalidity for two reasons: (1) That from its execution down to the time of the trial the fund has been held and managed under the agreement, and successive payments from income of the fund have been made to or applied for the benefit of plaintiff and her daughter as persons interested in the fund and in furtherance of the trust provisions. (2) That the validity of the agreement was expressly conceded on the trial.

[3] As to the first ground upon which an estoppel is claimed, we think it sufficient to say that the facts pointed to as constituting an equitable estoppel fail to prove an essential feature of such an estoppel, in that they do not show that the relations, the situation, or the rights of the parties now claiming the estoppel have been in any way changed, surrendered, or modified in reliance upon the validity of the contract or the acts of any of the parties thereunder, so that prejudice thereto would result from a present assertion of the invalidity of the agreement. Bailey v. Buffalo Loan, Trust & Safe Deposit Co., 213 N. Y. 525, 107 N. E. 1043.

[4] Considering now the second ground upon which an estoppel is urged, it appears that the trial court made a finding of fact as follows:

"(25) That the defendant Cassius M. Carrier claims that he has the right under said trust agreement to use said trust fund as his own money in paying [for] said Florida lands, and intends to use all of said trust fund to make said payments if the same is needed for that purpose, but that the validity of said trust was conceded upon the trial of this action by counsel for said defendant in his presence."

At the request of the defendants who are now the appellants herein, the court found as a conclusion of law:

"That the trust agreement of July 31, 1903, is a valid and subsisting instrument, creating a valid trust."

We do not think this agreement, invalid as we conceive it to be for the reasons above stated, can be validated by the action or agreement of any of the parties interested; the conditions upon which its invalidity is predicated remaining unchanged. As was said by Foote, J., in Church v. Wilson, 152 App. Div. 844, 852, 137 N. Y. Supp. 1002:

"Moreover, if the seventh clause of this will could not be sustained, because containing an unlawful restraint upon alienation, it could not be validated by agreement of the parties. The statutes can no more be violated by agreement of the parties than by will. It represents the public policy of the state, and is not such a statute as may be waived by interested parties on the theory that it was made for their benefit."

See, also, Bailey v. Buffalo Loan, Trust & Safe Deposit Co., supra, 213 N. Y. 539, 107 N. E. 1043.

[5] Nor do we think the appealing defendants conceded in terms 'on the trial that the agreement was for all the purposes of the action to be treated as valid in every event. It may here be observed that the court does not expressly so find as a fact. It is true, as the court finds in effect, that during the course of the trial counsel for these defendants said:

"I will admit on the record the trust agreement was valid."

This concession, however, seems to have been later in effect limited by the condition that the provisions of the trust agreement should not be held to preclude the right of defendant Carrier to manage the fund exactly as he might choose. In the course of his cross-examination as a witness on the trial the following testimony appears:

"Q. If necessary, you propose to use it [the fund] unless the court stops you? A. I would say so, if I needed it. Q. Unless the court stops you, if necessary, you propose to use it just the same as though it was your own money? A. I consider it is my own money. Q. You consider it is your own money? A. Yes, sir. Q. Just as though the trust had not been made? A. I feel it is my own money; yes. Q. That is the way you feel about it? A. Yes. Q. And you always have? A. I never felt I let that get away from me. I thought the condition I had made was so I could use it."

From this testimony, and other statements of the witness appearing elsewhere in his examination, it would seem that he did not intend to concede the validity of the agreement, except upon the condition that it should not be held to interfere with his free control and management of the fund. Such seems to be now his position on this appeal. Though counsel for appellants state in their brief on this appeal that appellants "concede the validity of the trust agreement," yet we are also advised by them that no agreement is conceded that would warrant a limitation of Mr. Carrier's right to manage the fund as he chooses; and, if that contention should prove to be inconsistent with the validity of the contract, then it is contended that Mr. Carrier's right to manage the fund as he chooses is controlling, even if the contract must fail by reason of such contention. We are therefore of the opinion, and so find, that the concession, made by the ap-

pealing defendants, that the agreement was valid, was intended to be and was in effect only that the validity of the agreement would not be questioned in the action provided that the right which appellant Carrier claims to manage and control the fund exactly as he chose should not be held to be in any manner limited by the agreement, if regarded as a valid trust agreement. So interpreted, the concession could not operate as an estoppel, preventing the assertion of the invalidating of the agreement.

The judgment should be reversed, except so far as it provides· for the payment from the fund of the sum of $400 allowed to the special guardian of the infant defendant, and judgment dismissing plaintiff's complaint directed, with costs of this appeal to be paid the special guardian from the fund in question in this action, and without costs to any other party. The order granting plaintiff an additional allowance should also be reversed.