In the Matter of the Estate of LEO OPPENHEIM, Deceased.

Surrogate's Court, Kings County, January 10, 1941.

*Eisman, Lee, Corn & Lewine [Louis F. Lee* and *Joseph J. Corn, Jr.,* of counsel], for Alan Fink, contingent remainderman, petitioner.

*Wrenn & Schmid [John H. Schmid* of counsel], for Cora Lazansky, legatee, respondent.

*Rieger & Albert,* for Walter G. Oppenheim and Bernice Oppenheim, life beneficiaries, and Helen O. Ryan and Leonora O. Yeager, contingent remaindermen, respondents.

*Charles A. Clayton,* special guardian for Merial Louise Yeager, Beverly May Yeager and Carol May Fink, infant contingent remaindermen.

WINGATE, S. At the time of his death in 1927, the testator was survived by his widow, Minnie, who has since died, by a daughter, Cora Lazansky, a son, Walter, and by two grandsons, Alan and Richard Fink, the children of a predeceased daughter, May Fink, as his sole heirs at law and next of kin.

By the " second " item of his will, which was probated in November, 1929, he directed the erection of a trust for the life benefit of his widow, thereupon providing in a second paragraph of the same item: " Upon the death of my said wife, or should she predecease me, upon my death, I direct my executors and trustees to pay one-third of the principal of my entire estate to my beloved daughter, Cora Lazansky, the wife of Mr. Justice Lazansky of the Borough of Brooklyn, City and State of New York, and to pay to my beloved son, Walter Oppenheim, residing in Hampton Bays, Long Island, New York, the income from the remaining two thirds of the said trust fund during his lifetime and during the lifetime of his wife, Bernice Oppenheim, and upon the death of my said son and his said wife, to divide the said two-thirds of my said estate equally between my four grandchildren, Richard Fink and Alan Fink, the sons of my deceased daughter May Fink and her husband Simon Fink, and Helen Oppenheim and Leonora Oppenheim, the daughters of my son Walter Oppenheim and his wife, Bernice Oppenheim, if they then be living, otherwise to their respective issue, share and share alike. It being the intention of the testator herein that said issue shall take *per stirpes* and not *per capita.*"

The widow enjoyed her primary equitable life estate up to the time of her death. All of the persons to whom reference is made in

the foregoing excerpt from the will are living. The questions propounded relate to the validity of the secondary trust of two-thirds of the original principal, and, if it be determined to be invalid, to the manner of devolution of the remainder in its entirety.

Certain parties who would benefit by a determination that the secondary trust is valid, have seized upon the fact that the direction for income payment is solely in favor of Walter. Whereas this cannot, in the opinion of the court, be deemed more than an eccentricity of wording intended to mollify any resentment of the son at being given merely a trust interest when the benefit to his sister was outright, yet, even if the effect argued for it were to be accorded, the trust is nevertheless an infringement of the pertinent statute (Real Prop. Law, § 42; Pers. Prop. Law, § 11), since it provides expressly that the remainder shall be distributable only " upon the death of my said son and his said wife," which two lives, when added to that of the widow, render the secondary trust void for remoteness. (*Matter of Wilcox*, 194 N. Y. 288, 306; *Matter of Chittick*, 243 id. 304, 319; *Seitz* v. *Faversham*, 205 id. 197, 202; *Fargo* v. *Squires*, 154 id. 250, 260; *Hillen* v. *Iselin*, 144 id. 365, 378; *Purdy* v. *Hayt*, 92 id. 446, 456.)

The question thereupon arises respecting the extent, if any, to which the directions for the devolution of the remainder may be salvaged while according due consideration to the testamentary plan.

The first inquiry in this connection concerns the possibility of accelerating the remainder of the invalid secondary trust which is measured by the lives of Walter and Bernice Oppenheim. This remainder is directed to be paid to the four named grandchildren " if they then be living," namely, on the demise of the survivor of Walter and Bernice. The will, however, expressly provides that if they be not living at such time, it shall be payable " to their respective issue, share and share alike," *per stirpes*. By reason of this substitutional gift to issue in the event of the predecease by any of these remaindermen of the time of possessory enjoyment, these remainders fall into the classification of contingently vested remainders, or, to employ the alternate appellation, of remainders vested subject to be divested. Whereas, therefore, the named grandchildren are at the moment the persons who are presumptively entitled to take upon the termination of the directed suspension, their rights are subject to defeat if they, severally, should chance to predecease the survivor of Walter and Bernice. There is consequently no present assurance that were distribution to be withheld until the expiration of the directed term of suspension, these named grandchildren would be the persons entitled to distribution.

In *Matter of Terwilligar* (135 Misc. 170, 184) this court, after a somewhat comprehensive review of the pertinent precedents, deduced the following rule respecting the situations in which remainders were, and were not, capable of acceleration, following the deletion of an invalid suspension: " the decided cases involving remainders following invalid trust provisions are uniform in placing contingently vested and purely contingent remainders in the same class so far as concerns the effects produced. The reason for this distinction is obvious. Here the inquiry is solely directed to the question of whether or not testator desired that certain specified individuals should under every conceivable circumstance receive the remainder. If this question can be answered in the affirmative, such remainder, following an invalid trust provision, will be accelerated, otherwise it will not. Stated in another way, if viewing the matter as of the date of death of the testator, one or more persons can be specifically pointed out who, if all of the directions of the testator, both valid and invalid, were given effect, would, upon the termination of the previous estates, be absolutely entitled to the remainder without qualification or condition of survivorship or otherwise, then on the deletion of the invalid provisions such individuals will take, otherwise they will not."

The Appellate Division for this department did this court the honor of affirming this determination *on the opinion of this court* (230 App. Div. 763), thereby adopting the statements of the opinion, including the foregoing rule, as its own pronouncement. Leave for further appeal was subsequently denied, both by the Appellate Division (230 App. Div. 846) and by the Court of Appeals (N. Y. L. J., Nov. 26, 1930, p. 1150), with the result that the foregoing statement presumably represents the applicable rule respecting the acceleration of remainders of the State of New York, and certainly that of this department.

Tested by this rule, the present remainders to the grandchildren are incapable of acceleration since, viewing the situation either as of the time of the death of the testator, or, indeed, as of the present time, there is no positve assurance that if the secondary trust were effectuated, they would be entitled to distribution, as their benefits would be forfeited if they failed to survive both Walter and Bernice. It follows, therefore, that intestacy must be declared at least as to the two-thirds of the remainder dedicated to the trust which is measured by the lives of Walter and Bernice.

The question thereupon arises as to whether the outright gift of the remaining one-third of the remainder to Cora can survive this determination of the invalidity of the other part. The issue here presented is whether, upon the deletion of the invalid remainder

gifts, the balance of the will has become so warped that to validate the balance would destroy the testamentary plan. Situations in which such a determination was reached may be found in many cases. (See *e. g.*, *Benedict* v. *Webb*, 98 N. Y. 460, 466, 467; *Holmes* v. *Mead*, 52 id. 332, 345; *Rice* v. *Barrett*, 102 id. 161, 164; *Tilden* v. *Green*, 130 id. 29, 50; *Matter of Butterfield*, 133 id. 473, 476; *Brown* v. *Quintard*, 177 id. 75, 85; *Bailey* v. *Buffalo L., T. & S. D. Co.*, 213 id. 525, 536, 537; *Matter of Hardgrove*, 223 App. Div. 646, 652.) Since such determinations are inevitably predicated upon the disclosure of the testamentary purpose evidenced by the terms of the will, and since no two documents of this variety are ever completely identical, it is obvious that adjudications that particular testamentary set-ups do, or do not, fall within the inhibition furnish scant aid in reaching a conclusion respecting other diverse plans of devolutionery direction.

Each task of this variety accordingly resolves itself merely into a concrete application of the principles which are well established in this regard. The criteria of determination have repeatedly been reiterated. " The doctrine " of salvage of a part of a testamentary direction " is only applicable where the vicious provision is clearly separable from the valid devise or trust, and may be disregarded without maiming the general frame of the will, or the testator's substantial and dominant purpose." (*Matter of Butterfield* 133 N. Y. 473, 476. See, also, *Bailey* v. *Buffalo L., T. & S. D, Co.*, 213 id. 525, 536.) " When it is possible to cut out the invalid provisions, so as to leave intact the parts that are valid, and to preserve the general plan of the testator, such a construction will be adopted as will prevent intestacy, either partial or total, as the case may be." ( *Kalish* v *Kalish*, 166 N. Y 368, 375.) " The dominant, underlying principle in all these cases is to carry out as far as possible within the meaning of the statute, the intention of the testator. If we can read into a will an intention to preserve any part of it, even with the illegal portions stricken out, the court will do so. In such a case we try to determine whether the maker of the will would have created the trust if all his express purposes could not be accomplished." (*Matter of Durand*, 250 N. Y. 45, 53.) " Excision of an invalid bequest to one child or descendant may result in injustice not intended by the testator, and in an inequitable division of the estate. It may so deform the general plan of division that the court is constrained to find that total intestacy would more nearly carry out the testator's intentions than partial intestacy." (*Matter of Lyons*, 271 N Y. 204, 209.)

With these authoritative criteria for decision as guides, the final **task is** an attempt at their concrete application to the present

situation. The testator was survived by a widow, by two living children and by the descendants of a deceased child as his heirs at law and next of kin and the natural objects of his bounty. His first concern was obviously the comfortable maintenance of the widow, which he accomplished by the erection for her benefit of a trust of his total net estate. The natural disposition of the remainder was by its dedication in equal parts to the three branches of his descendants, represented by his living son and daughter and the children of his deceased daughter This, with a minor variation, is precisely what he did. This variation was that he withheld the possessory enjoyment of the third part of the remainder intended for the branch of his descendants represented by his deceased daughter until after the death of his son and the latter's wife, and substituted the descendants of the son as the outright donees of the one-third which would normally have been payable to the son, giving the latter its intermediate use These were the only changes which the testator made in the devolution which would have resulted in intestacy if his wife had predeceased him.

Stated equivalently, the purposes of the testator were, *first*, to give his widow the life use of his entire estate; *second*, to give to the representatives of each branch of his descendants one-third of the principal outright; *third*, to substitute the descendants of his son for the son himself; *fourth*, to give the son and the latter's wife an intermediate use of a part of the principal; and *fifth*, to postpone the payment of the ultimate benefit to the branch of his descendants represented by the deceased daughter until after the death of the son and the latter's wife.

The first of these purposes has been accomplished. The last three are impossible of effectuation by reason of statutory infringement. The second is still possible of validization, but to do so will require a determination that the testamentary gift of one-third of the remainder to the daughter outright must fall with the balance of the remainder gift.

The results of the alternate available determinations, namely, that the remainder gift to the surviving daughter may be salvaged and that it may not, are worthy of analysis. If the gift of one-third to the surviving daughter be sustained, the effect, as to personalty, will be that the estate of the widow will receive one-third of the intestate two-thirds, or six-twenty-sevenths. The surviving daughter will receive the one-third given her, plus two-ninths of the intestate two-thirds, or a total of thirteen-twenty-sevenths; the son and the children of the deceased daughter collectively, will each receive four-twenty-sevenths. On this basis, the result as to the realty would be that the surviving daughter

will receive the one-third given her, plus an additional one-third of the intestate two-thirds, or a total of fifteen-twenty-sevenths, and the son and the children of the deceased daughter, collectively, will each receive six-twenty-sevenths

If, on the other hand, the entire remainder gift were determined to be void, the result as to personalty would be that the estate of the widow would receive one-third, and the surviving daughter, the son and the children of the predeceased daughter, collectively, each two-ninths; as to realty, each of the children's branches would receive one-third. Th difference appears with especial clarity when placed in tabular form.

| | Widow | | Surviving daughter | | Son and his children | | Children of deceased daughter | |
|---|---|---|---|---|---|---|---|---|
| | Personalty | Realty | Personalty | Realty | Personalty | Realty | Personalty | Realty |
| Under will | 0 | 0 | 9/27 | 9/27 | 9/27 | 9/27 | 9/27 | 9/27 |
| Remainder partly valid | 6/27 | 0 | 13/27 | 15/27 | 4/27 | 6/27 | 4/27 | 6/27 |
| Remainder wholly void | 9/27 | 0 | 6/27 | 9/27 | 6/27 | 9/27 | 6/27 | 9/27 |

In other words, if total intestacy of the remainder be declared, the obvious purpose of the testator to treat all his children and their representatives equally, will be attained, whereas if only the portion thereof which infringes the terms of the statute is deleted, the surviving daughter will receive more than three times as much of the personalty and more than twice as much of the realty as either the branch of the family represented by her brother, or her deceased sister.

In view of this complete " maiming " of the testator's expressed intent, the court deems itself constra'ned to determine that the entire remainder direction contained in the second paragraph of the " second " item of the will is ineffective and that such remainder devolves as intestate property as of the date of death of the testator

Enter decree on notice in conformity herewith.