LOUIS KRAMER, Appellant, *v.* RELGOV REALTY Co., INC., and Another, Respondents.

First Department, December 28, 1934.

*Arthur Kahr*, for the appellant.

*Otto A. Samuels*, for the respondents.

TOWNLEY, J.   On June 28, 1926, Amalie A. Dilg executed a bond and mortgage to the Relgov Realty Co., Inc., in the amount of $125,000, with interest payable semi-annually at six per cent. The principal sum could be declared due at the option of the obligee after default in the payment of interest, taxes or assessments. Five years later, on June 12, 1931, in consideration of the receipt of $100 and other valuable consideration, Relgov Realty Co., Inc., assigned this bond and mortgage to the plaintiff, Louis Kramer. On the same day, Relgov Realty Co., Inc., and the defendant Vogler " in order to induce Louis Kramer to purchase from the Relgov Realty Co., Inc., in which said company the said Edward C. H. Vogler has a large financial interest, a prior participation interest to the extent of Twenty-five thousand ($25,000) Dollars " in the bond and mortgage above mentioned, jointly and severally guaranteed to Louis Kramer the payment of the principal and interest of the bond and mortgage in accordance with its terms. The guaranty, however, was limited in amount to the principal sum of $25,000 and interest representing the prior participation in the mortgage purchased.

There was a default in the payment of interest due July 1, 1933, and after this had continued for thirty days plaintiff elected to call the entire bond due and payable.  No part of the $25,000 has been paid.  The plaintiff brought this action, not to foreclose the mortgage and collect on the bond, but to recover on the wholly independent undertaking of these defendants.

The answer sets up as a first complete and also as a partial defense and counterclaim that under section 1083-b of the Civil

Practice Act, as extended by the Laws of 1934, chapter 277, " the fair and reasonable market value of the mortgaged property, less the amounts owing on prior liens and encumbrances, is in excess of ·the amount sought to be recovered in this action." As a second complete and partial defense, the defendants say that consideration for the assignment was the sum of $20,000 paid by plaintiff to Relgov Realty Co., Inc., that the plaintiff is still the owner and holder of his interest in the mortgage and no action to foreclose the mortgage has been brought, and that by reason of the premises the defendants' liability, if any, is limited to the $20,000 paid by plaintiff and then only after he has exhausted his security and found the balance uncollectible, and then subject to the relief given by section 1083-b of the Civil Practice Act.

Section 1083-b of the Civil Practice Act, in so far as applicable, provides that " In any action * * * to recover a judgment for any indebtedness secured by a mortgage on real property and which originated simultaneously with such mortgage and which is secured solely by such mortgage, against any person or corporation directly or indirectly or contingently liable therefor, any party against whom a money judgment is demanded, shall be entitled to set off the fair and reasonable market value of the mortgaged property less the amounts owing on prior liens and encumbrances."

The above-quoted provisions clearly have no application to this situation. The action is not brought to recover a judgment for the indebtedness secured by the mortgage. The obligation of the defendants did not originate simultaneously with the execution of the mortgage but some five years thereafter. It arose not as an incident of the original debt but out of a wholly independent transaction. The defendants wanted to sell a participation in their rights under the mortgage and made the contract in suit to induce the plaintiff to make the purchase. The provision requiring that the indebtedness should originate simultaneously with the mortgage was clearly intended to exclude from the operation of the section collateral, incidental and subsequent obligations arising during the life of the mortgage. The protection afforded by section 1083-b of the Civil Practice Act to one directly or indirectly liable on the indebtedness is granted only to those who become bound at the time the mortgage was made. The word " indebtedness " must refer to the claim on which the complaint is grounded. The statute does not cover the situation at bar and cannot be enlarged by reference to other sections which depend upon different states of fact.

The second defense is insufficient since a foreclosure of the mortgage was not made a condition precedent to an action for

a recovery under the agreement. No substantial defense is set up either in the answer or in the affidavits in opposition to the motion.

The order, accordingly, should be reversed, with twenty dollars costs and disbursements, and the motion granted.

FINCH, P. J., MERRELL and GLENNON, JJ., concur; UNTERMYER, J., dissents and votes for affirmance.

UNTERMYER, J. (dissenting). The single question presented on this appeal is whether section 1083-b of the Civil Practice Act applies to a guaranty, executed on June 12, 1931, of the payment of the principal and interest of a " share or part " of a bond and mortgage executed and delivered on June 28, 1926. The mortgage was executed simultaneously with the bond, although the guaranty of payment was not executed until several years thereafter.

Section 1077-a suspends, during the period of the emergency, actions to foreclose mortgages on account of default in the payment of principal. Section 1077-b suspends actions on bonds secured by mortgage on account of any default in the payment of principal " if the indebtedness originated or was originally contracted for simultaneously with such mortgage and is secured solely by such mortgage, or upon any guaranty of payment of the principal or installment or amortization of principal, of any mortgage within the scope of section ten hundred seventy-seven-a or upon a guaranty of any obligation secured by such mortgage, so long as no action or proceeding shall be maintainable to foreclose such mortgage," provided that interest at the rate prescribed shall be paid upon such bond. Section 1077-b further provides that " No action shall be maintainable or judgment be entered during such emergency upon any guaranty of payment of any share or part of any bond and /or mortgage or group of bonds and /or mortgages represented by a certificate, bond, debenture or other instrument * * * so long as interest at the rate prescribed shall be paid."

It seems evident to me that the Legislature differentiated between an action on a bond executed simultaneously with the mortgage and a guaranty of payment of such a bond even though not given simultaneously therewith. In the case of an action on the bond such a provision was necessary, so that only the usual bond executed simultaneously with the mortgage would be brought within the operation of the statute. In the case of an action on the guaranty of such bond this condition was not ·imposed, obviously because it was intended that a guarantor should occupy the same position as the maker of the bond which had been guaranteed

Sections 1083-a and 1083-b must be read in the light of the other sections of this emergency legislation enacted at the same time and for a related purpose. Section 1083-a provides a limitation upon deficiency judgments during the period of the emergency by requiring that the fair market value of the mortgaged premises shall be allowed against the mortgage debt. By section 1083-b this relief is extended to actions on bonds secured by mortgage maintained " against any person or corporation directly or indirectly or contingently liable therefor." Here again, as in section 1077-b, the Legislature has distinguished between the debt " secured by a mortgage on real property and which originated simultaneously with such mortgage " and an action " against any person or corporation directly or indirectly or contingently liable therefor." As I read these provisions they do not apply at all unless the bond and mortgage were simultaneously executed, but if they were so executed, then they apply to " any " party who is " directly " liable as maker of the bond or " contingently " liable as guarantor. The manifest purpose of this was to protect, during the period of the emergency, not only the party who had executed a bond simultaneously with a mortgage, but all persons who, whether simultaneously or subsequently, had guaranteed the payment of the debt. Although the precise question was not decided in *Klinke* v. *Samuels* (264 N. Y. 144), the observations of the court in that case are equally appropriate here. " Any other interpretation would lead to strange results. Should the defendant pay in full he could not, although subrogated to the mortgagee's rights, recover from the mortgagor either in foreclosure or on the bond more of a deficiency than that provided in sections 1083-a and 1083-b. Again, if he had been made a party defendant in an action to foreclose the mortgage as he might have been (Civ. Prac. Act, § 1079, subd. 1, par. 7), any deficiency judgment entered up against him as it could have been (*Vanderbilt* v. *Schreyer*, 91 N. Y. 392; *Hochstein* v. *Schlanger*, 150 App. Div. 124; affd., 208 N. Y. 513), would have been limited to the equities as stated in section 1083-a of the amendment."

The order appealed from should be affirmed. with twenty dollars costs and disbursements.

Order reversed, with twenty dollars costs and disbursements, and motion granted.