Edward G. Howley, Plaintiff, *v.* Anthony J. Romagna and Another, Defendants.*

City Court of New York, Bronx County, March 26, 1935.

* The orders were affirmed in the Appellate Term, First Department, on appeals by plaintiff. On cross-appeals by defendant the orders were modified to the extent of denying the motion to strike out the second defense, on authority of *City Bank Farmers Trust Co.* v. *Ardlea Corp.* (267 N. Y. 224), decided subsequent to the appeal, which overruled *Kramer* v. *Relgov Realty Co., Inc.* (243 App. Div. 98), an authority which this court was bound to follow at the time of decision.

*Howard L. Kuttner*, for the plaintiff.

*Arthur H. Printz*, for the defendants.

EVANS, J.   Plaintiff asks for summary judgment, by striking out the two separate and distinct defenses of the answer, in an action upon a guaranty for the payment of the " instalments, interest and balance of principal " of a mortgage on real property.   The first defense sets up facts which are intended to obtain, for defendants, the benefits of section 1077-b of the Civil Practice Act, and the second defense, the benefits of section 1083-b of the Civil Practice Act, being a part of the Mortgage Moratorium Act (Laws of 1933, chap. 793, as amd. Feb. 4, 1935, and Laws of 1933, chap. 793).   Defendant, by cross-motion, seeks a dismissal of the action, because a tender of interest and costs to date has been made, within twenty days after the action was commenced, and relies upon the provisions of section 1077-e of the Civil Practice Act, as amended February 4, 1935 (Laws of 1935, chap. 17).

Plaintiff purchased the mortgage from one of the defendants, and, at the time he took the assignment of it, he was also given the guaranty by the vendor and the other defendant.   The guaranty was, therefore, executed at the same time as the assignment, but not, of course, at the same time as the original mortgage, which had been executed and placed on record prior thereto.   The assignment date is April 30, 1928.   Default in interest began January 1, 1934, and continued to January 1, 1935, at which time three semi-annual interest defaults existed.   The action was begun on or about February 15, 1935, to recover both principal and interest, and, with the answer, and within twenty days after commencement of the action, defendants made a tender of all the interest due, together with the costs to date.

The various sections of the Mortgage Moratorium Act are urged in support of the answer. Since the action is not in equity to foreclose the mortgage, nor at law to recover upon the bond, but upon an independent instrument, not made by the mortgagor, that part of the emergency legislation relevant here is section 1077-b of the Civil Practice Act, and only such other sections of the emergency legislation as it refers to.

That section, in its very first sentence, speaks of three classes of obligation: (1) Those executed simultaneously with the mortgage, and in the nature of an evidence of a debt, for which the mortgage is given as security; (2) a guaranty of payment of principal or installment or amortization of principal of any mortgage, within the scope of section 1077-a of the Civil Practice Act, and (3) a guaranty of any obligation secured by such mortgage. The instrument sued upon at bar falls within the last class.

The act provides, as to the first of these three classes of obligation, that, under certain circumstances: " No action shall be maintainable or judgment shall be entered during such emergency."

That is a clear expression of a definite period of time, which is fixed by section 1077-g of the Civil Practice Act as July 1, 1935. No other language is necessary to define what is meant by the phrase " during such emergency." When we come to the latter two classes of obligation, we find that the Legislature has not only indicated that the action is not maintainable during the period of the emergency but is also not maintainable " so long as no action or proceeding shall be maintainable to foreclose such mortgage."

The latter provision is pure repetition and surplusage if the intention is merely to fix a period of time during which such actions are not maintainable. If the latter provision is not mere tautology, it becomes imbued with meaning.

The phrase " so long as no action or proceeding shall be maintainable to foreclose such mortgage," then means more than a mere specification of a particular period of time. It is quite appropriate to include all the conditions under which an action to foreclose a mortgage may not be maintained. The latter is its natural meaning. The purpose of the act should not be shortened by selecting one particular meaning, where several are available and apparently intended.

We must, therefore, examine the statute to see under what circumstances an action or proceeding to foreclose a mortgage is not maintainable, so as to measure the degree of protection accorded to defendants in an action at law. So doing, we find that an equitable action to foreclose a mortgage is not maintain-

able until July 1, 1935, unless interest is not paid (Civ. Prac. Act, § 1077-g), and we find that even if interest remains in default, the action is still not maintainable, if the default in interest, no matter how long in arrears, is paid within thirty days after the statute takes effect, or within twenty days after the action is commenced. (Civ. Prac. Act, § 1077-e, as amd. Feb. 4, 1935 [Laws of 1935, chap. 17].)

So far, we read only the first sentence of section 1077-b, and read with it the portions of other sections that must be incorporated therein by the very reference of the act itself. Reading the second sentence of section 1077-b, which specifically speaks of guarantors of payment, such as defendants are, we are further told that " No action shall be maintainable or judgment be entered during such emergency * * * so long as interest at the rate prescribed shall be paid."

The statute is careful to guard the obligee of the guaranty of payment, so that he may have his interest " at the rate prescribed." And yet it is silent as to the due date of the interest. The rate of interest is regarded as important and the subject of protection, but the due date is entirely omitted from consideration. The Legislature has not said that the action is not maintainable so long as interest at the rate prescribed " *on the due date* " shall be paid. I do not see how the omission of the phrase " *on the due date* " may be read into the statute.

The section clearly shows that guarantors of payment of bonds and mortgages are intended to be protected by the act, so long as the interest due is paid. It is unnecessary that the guaranty be executed and delivered at the same time as the bond and mortgage, to cover it with the benefits of the statute. The requirement of simultaneous execution with the mortgage applies only to bonds and instruments in the nature of an evidence of a debt, for which the mortgage is given as security. Section 1077-b speaks of more than one class of obligations. So far as bonds, and other instruments in the nature of an evidence of a debt, for which the mortgage is given as security, the statute requires simultaneous execution. But it is different with a guaranty of payment. Such an instrument is not necessarily a part of the original transaction. It might be validly given thereafter. The requirement of simultaneous execution with the original mortgage would fail to protect the makers of such instruments, who executed it, upon an assignment of the bond and mortgage. For that reason the statute makes different provisions for these different classes of obligation.

Viewing the statute from another standpoint, it contains two prohibitions, one that no action is maintainable and the other that no judgment be entered so long as interest is paid. Ordinarily either of these provisions would be sufficient to arrest a judgment at some point in the process of obtaining it. And yet the Legislature has taken care to provide two separate obstacles to the entry of a judgment, "so long as interest at the rate prescribed shall be paid." One must note that the Legislature has provided no bar to the commencement of the action for default. It has permitted commencement of the action, but after commencement it has laid down conditions upon which it may or may not be maintained and brought to a conclusion. If mere default in the payment of interest on the due date determined the right to a judgment, then the entire language of the Moratorium Act is inappropriate to that purpose.

*Riback* v. *Prudence Company, Inc.* (152 Misc. 331) would be precisely in point and in favor of plaintiff's motion, if it spoke of the statute as it was amended on February 4, 1935. One must note that the statute, as written, at the time the *Riback* case was decided, made provision only for actions "heretofore instituted," or actions pending, at the time of its enactment. As to those actions, it provided that, within thirty days after the statute took effect, the defaulter of interest might relieve himself of the default. It then contained no provision that the defaulter of interest might also relieve himself of his default by paying it within twenty days after the commencement of the action, and it then contained no provision that it applied to actions "hereinafter instituted," as well as to those "heretofore instituted." Quite properly was it held that section 1077-e of the Civil Practice Act applied only to actions pending at the time of its enactment. But the amendment of February 4, 1935, changed its application in these vital respects.

The papers on this motion are in agreement that interest and taxable costs to date were tendered within twenty days after action commenced.

Under these circumstances, the plaintiff's motion, in so far as it seeks to strike out the first separate and distinct defense, is denied, upon condition that the defendants pay or tender once more the interest and costs to date, and, on failure to have the tender accepted, deposit said moneys with the clerk of the court, if said moneys have not already been so deposited.

The plaintiff's motion, in so far as it seeks to strike out the second separate defense is granted, upon the ground that the provisions of section 1083-b of the Civil Practice Act are not avail-

able to defendants. That section is available only to guarantors who executed the instrument simultaneously with the mortgage. (*Klinke* v. *Samuels*, 264 N. Y. 144; *Kramer* v. *Relgov Realty Co., Inc.*, 243 App. Div. 98.)

The defendant's motion to direct the plaintiff to accept the interest and costs, and, upon acceptance, to dismiss the complaint, or, in the alternative, directing the defendants to pay such sums into court, and, upon payment, to dismiss the complaint, is denied, upon the ground that section 1077-e of the Civil Practice Act prescribes this procedural remedy only for equitable actions in foreclosure.

An apparent difficulty presents itself in holding that, in some respects, section 1077-e is applicable only to equity actions, and yet, in others, it must be read into section 1077-b. The difficulty is not, however, real, when we consider the effect of section 1077-e. It does two things: First of all, it makes an action in equity " unmaintainable " when defaulted interest is paid within twenty days after the commencement of the action. It does not say so, in so many words, but that is precisely what it does. For just as soon as the interest is paid, the action must be dismissed. If it is to be dismissed, it is certainly no longer maintainable. It is more than " unmaintainable; " it is concluded. The second effect of the section is that it provides the remedy of dismissal, which is a procedural remedy. Considering the fact that a foreclosure action puts a cloud on the realty affected, and would bar the alienability of the equity of redemption, nothing short of a dismissal of the action will remove it. That is not so in an action at law upon a guaranty. Dismissal of the action is not necessary to obtain a stay of it during the period of the emergency. So that, in some respects, section 1077-e is applicable only to foreclosure actions. In so far as it provides a procedural remedy, calling for a dismissal of the complaint, upon payment of defaulted interest and taxable costs within twenty days after commencement of action, or within thirty days after the statute takes effect, it seems applicable only to equity actions. But in so far as this section destroys the " maintainability " of a foreclosure action, if interest and taxable costs are paid within twenty days after the commencement of the suit, it furnishes substantive law, which is, by reference, incorporated into section 1077-b of the Civil Practice Act by its language: " no action shall be maintainable or judgment shall be entered during such emergency  *  *  *  so long as no action or proceeding shall be maintainable to foreclose such mortgage."

It is quite clear that an equity action becomes " unmaintainable " as soon as interest and taxable costs are paid within twenty days after its commencement.

The Legislature has thus neglected to prescribe a procedure as to what should happen to a cause of this kind under these circumstances. It has said that the action is not maintainable, and has prohibited the entry of judgment, " so long as interest at the rate prescribed shall be paid " and " so long as no action or proceeding shall be maintainable to foreclose such mortgage."

The action cannot be dismissed and cannot be proceeded with. It is stayed by the Moratorium Act. It may, therefore, remain as an issue in this court, until the emergency expires, or until either of the parties moves as he or they may be advised.