In the Matter of the Judicial Settlement of the Intermediate Account of ANNA BREWSTER WELLS, as Sole Surviving Trustee under the Will of HENRY BREWSTER, Deceased, and as Executrix of CYRUS C. WELLS, Deceased, Late a Trustee of the Estate of HENRY BREWSTER, Deceased.*

ANNA BREWSTER WELLS, Individually, as Sole Surviving Trustee under the Will of HENRY BREWSTER, Deceased, and as Executrix of CYRUS C. WELLS, Deceased Trustee of Said HENRY BREWSTER, Appellant; EMILY B. FRELINGHUYSEN and Others, Respondents.

Fourth Department, November 25, 1935.

* See, also, 246 App. Div. 190.

*Judson A. Parsons* [*Arthur E. Sutherland* of counsel], for the appellant.

*Castle & Fitch* [*J. Sawyer Fitch* of counsel], for Emily B. Frelinghuysen and six others, respondents.

*J. Sawyer Fitch*, special guardian, respondent, for fifteen infants.

SEARS, P. J. Henry Brewster, whose will is before the court for construction, died on the 22d day of February, 1877. His wife survived him and died in November, 1924. Two daughters survived him, his sole heirs at law, Frances Hull Brewster, who was twelve years old at the death of the testator, and died March 18, 1920, and Anna Louise Brewster, who was six years old at her father's death, and is the appellant here. At the time of Henry Brewster's death, four brothers and three sisters of his were living, the youngest of whom was then fifty years of age, and also a nephew

and niece, aged respectively twenty-seven and twenty-four years, children of a deceased brother. These were his nearest collateral relatives. All the seven brothers and sisters died before 1906, and their descendants, as far as any of them had descendants, are among the respondents in this proceeding. The nephew, who was the son of a deceased brother, died November 1, 1910, without descendants, and the niece, Carrie M. Brewster Wallace, is still living and was cited as a respondent in this proceeding but has apparently taken no part in it, probably because, as appears, she has assigned her interest in this estate to the appellant.

The clauses of the will with which we are concerned upon this appeal are the following:

"*First.* I give and devise unto my wife all my real estate so long as she shall remain my widow.

"*Second.* I authorize and empower my trustees hereinafter named in their discretion, with the consent of my wife to sell the east half of my real estate corner of Clinton Lancaster and Court Streets in the City of Rochester embracing the brick house and barn and with the proceeds to construct a substantial dwelling on the west half of said premises fronting on Clinton Street, and to furnish the same in a suitable manner as a residence for my wife so long as she shall remain my widow.

" In case the proceeds of the real estate should not be sufficient to furnish the house, I authorize and direct my trustees to take from the personal property sufficient for that purpose. * * *

" *Ninth.* After the payments of all debts, expenses & legacies as above stated I direct my personal estate to be divided into three equal parts, & two-thirds thereof I direct to be invested for the benefit of my children, from the other third, I direct my executors to pay my wife the sum of three thousand dollars which I bequeath to her. I also give to my wife the use of the balance of such one-third of my personal estate during her life with power to dispose of the principal of the remainder of such one-third by will at her death. * * *

"*Eleventh.* Subject to the devises and bequests herein, I give devise and bequeath to my trustees hereinafter named all my estate real & personal in trust during the lives of my two daughters, to invest the same and receive the rents income and profits thereof and apply such rent income & profits to the use of my said two daughters in equal portions during the life of each, & if either should die without children living at her death, the whole income shall go to the survivor during her life—

" *Twelfth.* Should either of my daughters die leaving children I give, devise and bequeath to such children in fee one-half of the

estate then remaining in the hands of my trustees, and should either daughter die without leaving children, and the other should die leaving children I give devise and bequeath to such children, all my estate & property which shall remain at the death of my surviving daughter. * * *

"*Fourteenth.* Should both of my daughters die without leaving children or grandchildren living, at the time of the death of the survivor of my daughters, I give devise and bequeath all my estate and property remaining to my heirs at law then living & who would have been my heirs at law in case I had died without leaving children.

"*Fifteenth.* On the death or marriage of my widow, I authorize my trustees to sell any or all of my real estate and to invest the proceeds in other real estate or personal property in their discretion and I give the same authority to my trustees at any time before the marriage or death of my widow provided she unites in the conveyance, and in the latter case her right to the use of the proceeds shall be the same as her right to the use of the real estate."

The controversy relating to the real estate is based on paragraphs first, eleventh, twelfth and fourteenth, above quoted. The appellant contends that those provisions of the will which continued the trust in the share of the property held by the trustees first for the benefit of her sister Frances and then for her own benefit during her life and the contingent remainder following are invalid under the provisions of section 42 of the Real Property Law.

It was conceded upon the argument by the appellant that there was no invalidity in the provisions relating to that half of the estate which was to be first held in trust for that daughter who ultimately survived her sister. It was conceded, as it must have been, that in construing the will each half of the property was to be treated as held in a separate trust for each of the two daughters of the testator (*Vanderpoel* v. *Loew*, 112 N. Y. 167; *Matter of Horner*, 237 id. 489; *Savage* v. *Burnham*, 17 id. 561; *Leach* v. *Godwin*, 198 id. 35), and that considering separately the provisions relating to the share which was directed to be held in trust for herself (as events turned out) the provisions of the will were for an estate for life to the widow of the testator followed by a trust for appellant's benefit with alternate contingent remainders in fee after her death. Who would be the surviving daughter was, of course, determinable during their joint lives, and, therefore, at the death of both (a period allowed by the statute) the power of alienation would cease to be suspended and this share of the estate would vest in interest. The life estate for the widow of the testator concededly did not suspend the power of alienation, or postpone the vesting of the contingent remainder.

The appellant urges, however, that as to the other half there is invalidity. In relation to this share, as to the other, we conclude that there was no violation either of the rule against the suspension of the power of alienation (Real Prop. Law, § 42, formerly 1 R. S. 723, § 15) or of the rule limiting the remoteness of vesting. (*Matter of Wilcox*, 194 N. Y. 288; *Walker* v. *Marcellus & O. L. R. Co.*, 226 id. 347.) A life estate is always alienable, and, therefore, the estate to the widow for her life may be disregarded in applying the rule against the suspension of the power of alienation. The trust estate is to continue for the life of the two daughters and will suspend the power of alienation for that time. There is a contingent remainder following the lives of the two daughters of such a character as to permit persons coming into being during the daughters' lives to participate, and that too suspends the power of alienation during the lives of the two daughters, because until the death of both daughters it cannot be said who will ultimately receive the fee or even that those who are ultimately to take the fee are in being. But, on the death of the two daughters, irrespective of the life estate to the widow of the testator, the power of alienation will cease to be suspended and the remainder in fee will vest in interest.

A more difficult question, however, and one less covered by authority, concerns the application of section 43 of the Real Property Law (formerly 1 R. S. 723, § 17). (See *Waxson Realty Corporation* v. *Rothschild*, 255 N. Y. 332, dissenting opinion at p. 338.) The section is as follows: " Successive estates for life shall not be limited, except to persons in being at the creation thereof; and where a remainder shall be limited on more than two successive estates for life, all the life estates subsequent to those of the two persons first entitled thereto shall be void, and on the death of those persons, the remainder shall take effect, in the same manner as if no other life estates had been created."

There is language in the opinion in *Purdy* v. *Hayt* (92 N. Y. 446) which might lead one to the conclusion that section 43 of the Real Property Law has no application except where more than two life estates are followed by a vested remainder capable of acceleration at the death of the two life tenants. But the decision itself seems to hold that the section is applicable in the case of more than two successive life estates even though the remainder is contingent and not capable of acceleration. In fact in the third edition of Chaplin on the Suspension of the Power of Alienation (p. 322, § 419) the opinion in *Purdy* v. *Hayt* (*supra*) is construed as laying down the rule that section 43 is applicable in all cases of more than two successive life estates even though no remainder is limited thereon. (But see Walsh on Future Estates in New York, p. 198.) We need not consider, however, the application of section 43 to suc-

cessive life estates, more than two, where no remainder is limited thereon, for in this case we have a contingent remainder following the trust, and the only question is whether we here have more than two successive life estates. The life estate for the widow is one; following that there are beneficial interests for two daughters for their respective lives, but the interests of the two daughters are not life estates within the purview of this section. They are equitable interests but not estates at all. (*Amory* v. *Lord*, 9 N. Y. 403; *Woodruff* v. *Cook*, 61 id. 638; *Shipman* v. *Rollins*, 98 id. 311; *LaFarge* v. *Brown*, 31 App. Div. 542; *Matter of Terwilligar*, 135 Misc. 170; affd., 230 App. Div. 763.) That these life interests are not estates seems the logical result of the language of section 60 (1 R. S. 729), now contained in section 100 of the Real Property Law. (See Fowler's Real Prop. Law [3d ed.], pp. 318, 459, 460; *Bird* v. *Pickford*, 141 N. Y. 18; *Crooke* v. *County of Kings*, 97 id. 421; *Bailey* v. *Bailey*, Id. 460; *Corse* v. *Chapman*, 153 id. 466.)

It is suggested in Fowler's Real Property Law (3d ed. p. 324) that section 44, and inferentially, section 43, may have application to the legal estates of trustees of an express trust. Authorities are lacking on this point, and it hardly seems possible that section 43 would be held to interdict the appointment of more than two successive trustees for life of an express trust for the benefit of only two beneficiaries, or for that matter of any number of beneficiaries provided there was a limitation to two lives in being. (See Walsh, Future Estates in New York, p. 199.) If, however, sections 43, 44 and 45 may be applied to the legal estate of the trustees, still we find no invalidity here. In Fowler's Real Property Law (3d ed. p. 324 *et seq.*) there is a discussion of the question whether the legal estate of the trustees is an estate in fee determinable or an estate for the life of another (*pur autre vie*). (See, also, Chaplin on Suspension of the Power of Alienation [3d ed.], p. 330, § 432.) If it is an estate in fee, none of the sections of the Real Property Law apply to it. If it is an estate *pur autre vie*, then such estate must be construed as a life estate. (Real Prop. Law, § 30, derived from 1 R. S. 722, § 1.) Then we have a life estate to the widow of the testator and a second estate to named trustees living at the death of the testator for the lives of two other persons, namely, the beneficiaries. This is at most but two life estates; for an estate *pur autre vie* measured by the lives of two persons is expressly recognized in section 45 of the Real Property Law (derived from 1 R. S. 724, § 19). If the trustees' estate is a legal estate *pur autre vie*, it is a peculiar one; for instead of passing as assets to the trustees' legal representatives, it vests in the Supreme Court. (Real Prop. Law, § 111, derived from 1 R. S. 730, § 68.) It is not necessary to pursue these speculations farther.

As already stated, it seems probable that section 43 and the following sections have no relation to the estates of trustees, but that the authors of the Revised Statutes thought that the rule against the suspension of the power of alienation provided a sufficient limitation upon the estates of trustees and the equitable interests of beneficiaries.

Two cases already cited have supported wills containing provisions substantially identical with those we have been considering here. (*Bailey* v. *Bailey*, *supra*, and *Corse* v. *Chapman*, *supra*.) We are referred to only one case in conflict. In *Church* v. *Wilson* (152 App. Div. 844; affd., on opinion below, 209 N. Y. 553) there is a determination to the contrary. The decision seems to treat the life estate there involved preceding the trust estates as though it were itself an estate in trust and, therefore, suspended the power of alienation. The whole opinion is based on the rule against the suspension of the power of alienation and has nothing to do with the rule against successive life estates. We cannot believe that this case overruled *Bailey* v. *Bailey* and *Corse* v. *Chapman* without mentioning them. We prefer to take the language of the opinion in the *Church* case literally and treat the decision as one relating to a trust for more than two lives in violation of the rule against the suspension of the power of alienation. (*Matter of Trevor*, 239 N. Y. 6, at p. 16.)

It is suggested by the appellant that the power given in the fifteenth paragraph of the will to convert the real estate into personal property during the lifetime of the widow, with her consent, in some way results in permitting a change of the widow's life estate in realty to a trust estate for her benefit in personal property. The power has no such effect. The interest of the widow after such sale whether there was an equitable conversion or not would remain a legal life estate. The last clause in the fifteenth paragraph is of itself sufficient to require such a construction. But even without this clause the effect of the exercise of the power would not create a trust. This is in accordance with earlier decrees of the surrogate on intermediate accountings.

The provisions of the will as to the personal estate (Paragraphs ninth, eleventh, twelfth and fourteenth) do not transgress the rules against the suspension of the power of alienation or the remoteness of vesting or as to successive life estates. As to two-thirds of the personalty of the estate, a trust was established by the will for the benefit of the two daughters with provisions such as were also applicable to the real estate, but without a precedent life estate to the widow. As to the remaining one-third, the widow is given a life estate with power of disposition by will, and in case of the failure to exercise the power the personalty seems to pass under

the eleventh, twelfth and fourteenth paragraphs in the same way as the real estate passes; and what has been said about the real property is applicable to the personal property.

There is a further question of interpretation relating to the fourteenth paragraph, and centering in the words relating to the disposition in the contingency of the death of both daughters without leaving children or grandchildren living at the death of the survivor; the words are, " I give devise and bequeath all my estate and property remaining to my heirs at law then living & who would have been my heirs at law in case I had died without leaving children." The appellant contends that only the niece, Carrie M. Brewster Wallace, meets this description, and that as she has conveyed her interest to the appellant, the appellant will be entitled to any interest which she may succeed to in case the appellant dies without leaving children (and appellant is a widow over sixty years of age, and has no living children or grandchildren). Should Carrie M. Brewster Wallace, the sole survivor of the testator's nearest collateral relative living at the time of his death in 1877, die before the death of the appellant, according to appellant's argument, there would be no person answering the description of remainderman contained in the words quoted from the fourteenth paragraph and an intestacy would result, and the whole right of inheritance from the testator in case of intestacy belongs to the appellant.

On the other hand, the respondents contend that the description of remaindermen in the fourteenth paragraph refers to those who would have been the testator's heirs at law in case he had then died, without living children, i. e., that the supposititious event named in the will relating to a determination of his heirs at law then living, is his death simultaneously with that of his last surviving daughter, and that the descendants of brothers and sisters all would share in the remainder.

In determining this question, as in passing on every other question of construction, our attempt must be to discover and give effect, if possible, to the intention of the testator. General rules are of little help. Usually, the word " heirs " relates to heirs at the time of death. But is it probable under the circumstances here that this testator intended to exclude as possible remaindermen the children of his aged or aging brothers and sisters and to make a provision which further was likely to become of no effect whatever because of the deaths during his daughters' lives of all the persons who would have been at his death his heirs in case both his daughters had predeceased him? His niece, who is still living, was at the time of his death twenty-four years of age. His children were twelve and six, respectively. So it seems that there is an improbability, at

least, that such was the intention; still, it is possible. In any event the testator was providing for a contingent remainder which must have seemed to him only remotely possible of becoming effective. Futurity was of the essence of the gift. In such cases the word " heirs " may refer to persons not the heirs at the time of death, but to those who would have been the heirs in case of a hypothetical death at some future time. (*Farmers' Loan & Trust Co.* v. *Callan,* 246 N. Y. 481.) Considering the whole scheme of this will and who were his relatives at the time of the making of the will (six days before his death), we reach the conclusion that the testator intended by the words in the fourteenth paragraph to describe those of his collaterals who would have been his heirs if he had died at the time of the death of his last surviving daughter. We can only surmise why the exact language was used. Possibly after the words, " to my heirs at law then living " had been written, it occurred to the testator that his heirs at law would most probably be his two daughters and the provision was for a remainder after the death of both of them without children. And that the words, " to my heirs at law then living " were thus in all probability literally impossible of application. So he may have added the words in further explanation to show that he did not mean " heirs at law " in the strict sense, but did mean his nearest collaterals living at the time the contingent remainder might vest.

Our conclusion, therefore, accords with that of the learned surrogate as to the matters involved on this appeal.

Upon an appeal (246 App. Div. 190) from a separate decree of the Surrogate's Court involving the propriety of credit claimed in the trustees' account for moneys paid for services of an attorney, this court has entered an order on even date herewith, directing certain modifications of the decree there appealed from, which result in a reduction of the surcharge of $5,125 to $2,425, which must also be modified in this decree. The questions there involved are not in any manner connected with the matters discussed in this opinion.

The decree, as modified in accordance with the order mentioned, should be affirmed, with costs to the respondents payable out of the estate.

All concur. Present — SEARS, P. J., EDGCOMB, THOMPSON, CROSBY and LEWIS, JJ.

Decree, as modified in accordance with the order made on even date herewith, affirmed, with costs to the respondents payable out of the estate.