In the Matter of the Estate of MARY H. WARD, Deceased.*

Surrogate's Court, Monroe County, December 24, 1936.

---

* Affd., 251 App. Div. 781.

*Hubbell, Taylor, Goodwin, Nixon & Hargrave* [*Raymond Bentley* of counsel], for the petitioner.

*B. B. Baker*, special guardian.

FEELY, S. Nearly twenty years before her death in 1935 this testatrix made her last will, wherein she directed, among other things, that if her husband did not outlive her — which proved to be the fact — then her executors should divide her estate into eight equal parts and pay over one of those parts " to each of my children living at the time of my death, or to the heirs at law of any children of mine now living who shall not survive me."

To ascertain the persons whom she meant to designate by the words " heirs at law " in the alternate clause just quoted has now become, in the sequence of events, the task before this court, especially in respect of the share intended for her son George Merritt Ward, who died before his mother's death.

This will is in the handwriting of the husband of the testatrix. He, apparently, copied it from a fairly well-drawn draft, although he himself was not skilled in the law. Not unlikely this clause was in the original; for the phrase in question is one that even lawyers sometimes use somewhat loosely. As a whole the will shows much more legal skill than does the ordinary holograph.

The only other place where the will uses this phrase, " heirs at law," is in a setting that does not shed any light on the exact sense in which testatrix used this phrase in either place.

The circumstances were that at the date of the will, February 10, 1916, testatrix had a son named George Merritt Ward, who nearly two years before this will had married with the petitioner, now his widow; and of that marriage, and after the date of his mother's will, there were born four children, all of whom, except one, are now living, The exception was their first-born child, Charles E. Ward, who was born February 17, 1917, but lived only five months. His father died testate on April 12, 1928, leaving his widow and those three children him surviving. The testator's mother outlived him by seven years, and died May 12, 1935.

In that setting, when testatrix used those words, " heirs at law," she had known for two years her son George's wife; and also that this wife as yet had no children; for the first child came a year

and seven months after its grandmother's will. Testatrix used those words to describe a possible class of persons, of whom she knew that none of them, except George's wife, was yet born. Of that class she spoke as a possible alternate or substitute class for the first class she had in view, to wit, those of her eight children " living at the time of my death." She said, in effect, that if any one of her eight children were not living at the time of her death, the one-eighth share intended for such child should then go to such child's " heirs at law " then living. In respect of the point of time at which both the membership in those classes was to be determined, and also the time at which ownership would pass absolutely from her to them, her actual intention, as gathered from the context of this substitute clause, was to fix that time at the date of her own death, because her express condition, to wit, predeceasing, might become effective in the last minute before her own death. In this respect, the point of time actually intended coincides with the time she would be deemed to have intended under the general rule of law for determining the personnel of classes so described and conditioned. (*Gilliam* v. *Guaranty Trust Co.*, 186 N. Y. 127; *Matter of Canfield*, 136 Misc. 551; affd., 231 App. Div. 708; affd., 256 N. Y. 610; *Campbell* v. *Rawdon*, 18 id. 412.) At the date of her death she meant to give this share of her estate to a legatee who might achieve rights as a substitute as late as the minute before she died. Naturally, such substitute would have to bear some relation to the displaced member of the primary class— George, in this instance; and that relationship would be partially fixed, for purposes of identification, by its existence and conditions as of the date of George's prior death to that of his mother; but for all that the substitution was meant to be effective as the case might happen to be at the moment just appreciably preceding her own death. Occasionally, testators loosely use this word " heir," as Judge SEARS, for example, pointed out in *Matter of Brewster* (246 App. Div. 192), to " refer to persons not the heirs at the time of death, but to those who would have been the heirs in case of a hypothetical death at some future time." Here the language used of her then living son was broad enough to include his dying, not exclusively when he died, but decisively as of the last moment just before her own death. In other words, she clearly indulges in a hypothesis that might prove contrary to the fact, in respect of the time when the substitution should become effective. For all purposes, the substitution must be considered as dependent not only on the facts but also on the law existing at the minute of the death of the testatrix. (*Matter of Scudder*, 156 Misc. 633; *Matter of Angarica*, 157 id. 98; *Matter of Waring*, Id. 944.)

The meaning attached to the word " heir " alone, without the suffix " at law," varies with the various settings of fact. It has been used to signify even a legatee, and sometimes a blood relative, and sometimes of one who takes land, as distinct from personalty. Strictly, the suffix " at law " adds the merely expectant feature of one's statutory position toward an ancestor or source of title who is considered as still living, whereas the word " heir " alone denotes that the ancestor has already died.

In the case at bar, testatrix, in 1916, could not have known that this particular son would predecease herself, nor that his estate would be all in personalty, as in the event it was, nor that he would later will it all to his then existing wife; and the language of testatrix is inappropriate to designate a person who might take under a will other than her own. From the fact she knew this son had a wife, it may be inferred that the words she used were meant to include her. Had she meant to exclude affinities and to include only blood relatives she naturally would have used the words children or descendants, if not issue, or she could have relied upon the statute to save the legacy from lapsing. In selecting the broader words ' heirs at law " she probably meant all those to whom the law in effect at the date of her own death would pass her property, that is to say, to those who might by that standard be found to be the general substitutes in the supposed death of a child dying in the last minutes of testatrix's life and at an appreciable interval of time before the death of testatrix. Takers at that time, those in general to whom the law would then pass her property, rather than blood relatives, were intended by testatrix by this phrase " heirs at law."

Although it is immaterial — or at least not decisive — it is interesting to note that when George died in 1928 his estate con-sisted wholly of personalty; so that had he died intestate, the petitioner, as his widow, would have taken one-third, and the three children the rest. No change in that legal situation was made in 1930. Incidentally, this testatrix left only fifty dollars in realty, and nearly three hundred thousand dollars in personalty; so that practically the result is the same under the rule applied above to the residual eighth now under consideration.

Enter a decree in accord with this decision holding that the widow of George Merritt Ward, deceased, upon the death of this testatrix became entitled to one-third of one-eighth of the residue of this testatrix's estate; and that his three children now living like-wise became entitled to share equally the two-thirds thereof remaining.